# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
May 11, 2011 Session

## STEPHEN BERNARD WLODARZ v. STATE OF TENNESSEE

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Hawkins County**
**No. 07CR0470      John F. Dugger, Jr., Judge**

---

**No. E2008-02179-SC-R11-CO - Filed February 23, 2012**

---

The petitioner, charged with first degree premeditated murder and other crimes, entered best interest guilty pleas and received an effective sentence of life without parole. After an unsuccessful petition for post-conviction relief challenging the effectiveness of his trial counsel, he filed a petition for a writ of error coram nobis alleging newly discovered, exculpatory ballistic evidence. The trial court denied the petition, and the Court of Criminal Appeals affirmed. Wlodarz v. State, No. E2008-02179-CCA-R3-CO, 2010 WL 1998766 (Tenn. Crim. App. May 19, 2010). We granted the application for permission to appeal to consider whether a petitioner who has entered guilty pleas may challenge his convictions by writ of error coram nobis pursuant to the terms of our statute. Tenn. Code Ann. § 40-26-105(b) (2006). While we have determined that the petitioner did not forfeit the procedural remedy of writ of error coram nobis based on newly discovered evidence by entering the guilty pleas, the evidence in this instance does not qualify as newly discovered. Accordingly, the judgment of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Criminal Appeals Affirmed**

GARY R. WADE, J., delivered the opinion of the Court, in which JANICE M. HOLDER and SHARON G. LEE, JJ., joined. WILLIAM C. KOCH, JR., J., filed a separate opinion concurring in the judgment in which CORNELIA A. CLARK, C.J., joined.

William Louis Ricker, Greeneville, Tennessee, for the appellant, Stephen Bernard Wlodarz.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Solicitor General; Mark A. Fulks, Senior Counsel; C. Berkeley Bell, Jr., District Attorney General; and J. Douglas Goodbee, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts and Procedural History**

On July 13, 2000, officers from the Hawkins County Sheriff's Department were dispatched to the scene of a home burglary on Short Road near Rogersville. A witness, Phyllis Rook, provided a description of a man seen "near the back of the house" that matched that of Steven Bernard Wlodarz ("the Petitioner"). Tracking dogs led officers to the Petitioner's residence, which was located a short distance from the burglary. When the officers arrived, the Petitioner, armed with a shotgun, ordered them off his property. The officers left to obtain arrest warrants for attempted aggravated burglary, vandalism, and two counts of aggravated assault. By the time they returned to make an arrest, however, the Petitioner had barricaded himself in his house, forcing the officers to summon the tactical unit. After a standoff lasting several hours, the tactical unit used tear gas to force the Petitioner out of his house. A gunfight ensued. During the exchange of fire, Officer Gerald Gibson was shot and killed.

A Hawkins County grand jury indicted the Petitioner on a number of charges, including first degree premeditated murder. The State gave notice of its intention to pursue the death penalty. The State's case included ballistic evidence, an incriminating statement that the Petitioner made to police, and a note written by the Petitioner as tear gas was thrown into his house. In the note, he expressed his intention to kill an officer. During plea negotiations, the State offered the Petitioner a life sentence without the possibility of parole. On September 18, 2001, after discussing the State's plea offer with his family and the mitigation specialist who had been retained to assist in his defense, the Petitioner entered best interest guilty pleas[1] to the charges of first degree premeditated murder, attempted first degree premeditated murder, two counts of aggravated assault, and one count of manufacturing a Schedule VI controlled substance. See North Carolina v. Alford, 400 U.S.

---

[1] A best interest plea is one in which the defendant is "unwilling or unable to admit his participation in the acts constituting the crime." North Carolina v. Alford, 400 U.S. 25, 37 (1970). This is often referred to as an Alford plea. Although there is no specific reference to an Alford best interest plea in Rule 11 of the Tennessee Rules of Criminal Procedure, such a plea is not uncommon. A nolo contendere plea is listed as an option. A nolo contendere plea is one "by which the defendant does not contest or admit guilt." Black's Law Dictionary 1269 (9th ed. 2009). Under our rule, trial courts, before accepting a guilty plea, must be satisfied that "there is a factual basis to the plea." Tenn. R. Crim. P. 11(f) (2001). The rule does not, however, require a factual basis for a nolo contendere plea. State v. Crowe, 168 S.W.3d 731, 747 (Tenn. 2005); see also Alford, 400 U.S. at 35-36 n.8 (observing that while a guilty plea requires a factual basis before acceptance by the court, a nolo contendere plea does not); Blohm v. Comm'r, 994 F.2d 1542, 1554 (11th Cir. 1993) (stating that while guilty pleas must be rooted in fact before acceptance, no such requirement exists for a nolo contendere plea).

25, 37 (1970); <u>Dortch v. State</u>, 705 S.W.2d 687, 689 (Tenn. Crim. App. 1985).[2]  The trial court imposed an effective sentence of life without the possibility of parole.

On September 12, 2002, the Petitioner filed a petition for post-conviction relief.  He asserted that his guilty pleas had not been knowingly, intelligently, and voluntarily entered and that his trial counsel had been ineffective.  Specifically, the Petitioner alleged that his trial counsel failed to inform him of critical bullet fragment evidence before he entered the plea agreement.  The Petitioner also claimed that he was taking medication that may have affected his ability to fully understand the consequences of his pleas.  During the hearing on his petition for post-conviction relief, however, the Petitioner acknowledged that before he entered his pleas, he and his lead counsel had discussed the evidentiary importance of the bullet fragments removed from the body of the victim.  He specifically acknowledged that he knew that the test results suggested that the fragments did not "perfectly" match the gun he had fired.  Moreover, a motion filed on his behalf before his pleas included an acknowledgment that there were "no conclusive matches between bullet fragments found at the scene of this alleged offense and those found in the body of Officer Gibson" and that "several fragments have been sent to the FBI in order to attempt to find matches between the two groups."

Based on the evidence presented at the hearing, the post-conviction court denied relief in 2002, concluding that the Petitioner had not been denied the effective assistance of counsel and that his guilty pleas had been knowingly, intelligently, and voluntarily entered.[3]  The Court of Criminal Appeals affirmed, and this Court denied application for permission to appeal.  <u>Wlodarz v. State</u>, No. E2002-02798-CCA-R3-PC, 2003 WL 22868267, at *3 (Tenn. Crim. App. Dec. 3, 2003), <u>perm. app. denied</u>, (Tenn. May 17, 2004).  In 2005, the Petitioner filed a motion to reopen his petition for post-conviction relief, which was also denied.  On appeal from that ruling, the Court of Criminal Appeals affirmed the denial of relief.  <u>Wlodarz v. State</u>, No. E2005-00438-CCA-R28-PC (Tenn. Crim. App. May 6, 2005 Order).

---

[2] When represented by counsel and the record contains strong evidence of guilt, a defendant may knowingly, intelligently, and voluntarily consent to the imposition of a prison sentence, even though he or she declines to admit criminal culpability.  <u>See</u> 10 David Louis Raybin, <u>Tennessee Practice: Criminal Practice and Procedure</u> § 22:9, at 189-90 (Rev. ed. 2008).

[3] The trial court "determined that [the Petitioner's] trial attorneys developed defenses and theories of the case, filed every conceivable motion, considered all of the evidence, investigated the case, and did everything that could be expected for [the Petitioner]."  <u>Wlodarz v. State</u>, No. E2002-02798-CCA-R3-PC, 2003 WL 22868267, at *3 (Tenn. Crim. App. Dec. 3, 2003).

On December 17, 2007, the Petitioner filed a petition for writ of error coram nobis in the Criminal Court for Hawkins County,[4] initially alleging that he was entitled to a new trial because he had discovered that the State did not actually send ballistic evidence to the Federal Bureau of Investigation ("FBI") for analysis prior to his plea and because the inconclusive results may have made a difference in his willingness to enter the plea agreement. At the hearing on his petition, the Petitioner, after acknowledging that the FBI had in fact conducted tests prior to his pleas, altered his position, alleging that the State had withheld from him the exculpatory nature of the results.[5] In response, the State asserted that all of the ballistic evidence was submitted to the Petitioner prior to his guilty pleas, and that these very issues had been addressed during the post-conviction proceedings. The State did not challenge the Petitioner's petition for writ of error coram nobis on the grounds that it was untimely or that the Petitioner had failed to exercise due care in finding and presenting the purported newly discovered evidence.

After tolling the statute of limitations on due process grounds, the trial court denied the petition, pointing out that in a motion filed in 2001, the Petitioner, who had previously sought further testing, acknowledged that there had been "no conclusive comparisons" of the bullet fragments. In consequence, the trial court determined that the ballistic reports were not "newly discovered evidence" as required by Tennessee Code Annotated section 40-26-105(b). Further, the trial court concluded that the ballistic evidence, even if newly discovered, did not undermine the Petitioner's guilty pleas, because the Petitioner entered the pleas knowingly and voluntarily.

The Court of Criminal Appeals affirmed the dismissal of the petition. Wlodarz v. State, No. E2008-02179-CCA-R3-CO, 2010 WL 1998766, at *5 (Tenn. Crim. App. May 19, 2010). While observing that coram nobis relief based on newly discovered evidence was available following the entry of a guilty plea, id. at *4, the Court of Criminal Appeals determined that the evidence was not "newly discovered" because the Petitioner "was well-

---

[4] Generally, petitions for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final, Tenn. Code Ann. § 27-7-103 (2000), and must demonstrate that the petitioner was "without fault" or was diligent and exercised due care in discovering and presenting the purported newly discovered evidence, Tenn. Code Ann. § 40-26-105(b); see generally Johnson v. Russell, 404 S.W.2d 471, 473 (Tenn. 1966). Due process considerations, however, can result in the tolling of the one-year statute of limitations. Workman v. State, 41 S.W.3d 100, 103 (Tenn. 2001).

[5] One test indicated that the lead bullet fragments found in the body of the victim "differ in composition" from the lead core of a bullet in the gun recovered from the Petitioner's residence. A test of a bullet found in a gun in the Petitioner's truck indicated that fragments taken from the victim were "analytically indistinguishable."

aware of the inconclusive test results prior to his pleas, and the defense was . . . prepared to cross-examine the State's witnesses about this matter 'extensively' [if necessary]," id. at *5.

This Court granted the Petitioner's application for permission to appeal and directed the parties to address the threshold question of whether an inmate whose conviction is based on a guilty plea, rather than the result of a bench trial or a jury verdict, may challenge his or her conviction through a petition for writ of error coram nobis based on newly discovered evidence.

## II. Standard of Review

Determining whether a prisoner whose conviction is based on a guilty plea may subsequently challenge his or her conviction using a petition for a writ of error coram nobis requires this Court to construe Tennessee Code Annotated section 40-26-105(b). The construction of a statute is a question of law, which is reviewed de novo without any presumption of correctness. In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009). When dealing with statutory interpretation, well-defined precepts apply. Our primary objective is to carry out the legislative intent without broadening or restricting the statute beyond its intended scope. Houghton v. Aramark Educ. Res., Inc., 90 S.W.3d 676, 678 (Tenn. 2002). In construing legislative enactments, we presume that every word in a statute has meaning and purpose and should be given full effect if the obvious intention of the General Assembly is not violated by so doing. In re C.K.G., 173 S.W.3d 714, 722 (Tenn. 2005). When a statute is clear, we apply the plain meaning without complicating the task. Eastman Chem. Co. v. Johnson, 151 S.W.3d 503, 507 (Tenn. 2004); Abels ex rel. Hunt v. Genie Indus., Inc., 202 S.W.3d 99, 102 (Tenn. 2006). When a statute is ambiguous, however, we may reference the broader statutory scheme, the history of the legislation, or other sources. Parks v. Tenn. Mun. League Risk Mgmt. Pool, 974 S.W.2d 677, 679 (Tenn. 1998). When the statutory language does not address a precise issue, the "objective and spirit behind the legislation" may be determinative. Lipscomb v. Doe, 32 S.W.3d 840, 845 (Tenn. 2000) (quoting Dorrier v. Dark, 537 S.W.2d 888, 892 (Tenn. 1976)). Furthermore, the "common law is not displaced by a legislative enactment, except to the extent required by the statute itself." Houghton, 90 S.W.3d at 679.

## III. History of Writ of Error Coram Nobis
### A. General History

The common-law writ of error coram nobis, which came into being five centuries ago, "allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced." State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999). While available in criminal proceedings, the common-law writ may have been "more frequently employed in civil cases" in this country. Id. at 667. But see Adler v. State,

35 Ark. 517 (1880) (recognizing writs of error coram nobis as available remedies in criminal cases); Ex parte Toney, 11 Mo. 661 (1848) (directing the issuance of coram nobis relief in criminal cases); Jones v. Commonwealth, 108 S.W.2d 816, 817 (Ky. Ct. App. 1937) (acknowledging writ of error coram nobis as a common-law remedy); see also John S. Gillig, Kentucky Post-Conviction Remedies and the Judicial Development of Kentucky Rule of Criminal Procedure 11.42, 83 Ky. L.J. 265 (1994-1995). The United States Supreme Court in Mooney v. Holohan, 294 U.S. 103, 114 (1935), construing California law and citing People v. Mooney, 171 P. 690 (Cal. 1918), confirmed the continuing availability of the writ of error coram nobis in criminal proceedings, explaining that a "motion to set aside the judgment after it had become final and a motion for new trial had been denied, and the time therefor[e] had expired, was 'in the nature of an application for a writ of error coram nobis, at common law.'" See Mixon, 983 S.W.2d at 667; 39 Am. Jur. 2d Habeas Corpus § 194 (2011). One author examining the writ highlighted a case in which a petitioner, whose conviction was based on a guilty plea and had become final, sought and received coram nobis relief based upon newly discovered evidence. Morgan Prickett, The Writ of Error Coram Nobis in California, 30 Santa Clara L. Rev. 1, 2 (1990) (citing People v. Welch, 394 P.2d 926 (Cal. 1964)) [hereinafter Prickett, 30 Santa Clara L. Rev.]. In reference to the procedure, the author described coram nobis as "evok[ing] common law antecedents dating back to Norman feudalism and royal prerogative," while also retaining a "vital . . . utility." Id. at 2.[6]

### B. Common Law History in Tennessee

This Court has long viewed writs of error coram nobis as a measure of "most remedial nature, which seems to have been invented lest in any way there should be an oppressive defect of justice." Jones & Co. v. Pearce, Park & Co., 59 Tenn. 281, 286 (1873). The remedy has its origin in the common-law. See, e.g., Merritt v. Parks, 25 Tenn. 332, 335-36 (1845) (explaining that "[t]o hold that [the writ of error coram nobis] does not apply . . . would be to give an effect to these summary remedies beyond the purpose of their creation, and alike violative of the general policy of our laws and the principles of right. This being so, there is no difficulty in holding that the writ of error coram nobis is the proper remedy. It is the only remedy at law."). In Crawford v. Williams, 31 Tenn. 341, 345 (1851), this Court ruled that "[i]f a judgment be erroneous in matter of fact only, and not in matter of law, it may be reversed in the same court by writ of error coram nobis." Recently, in Mixon, this Court, relying on language appearing in Green v. State, 216 S.W.2d 305, 306-07 (Tenn. 1948), observed that the common-law writ of error coram nobis had been "limited in scope to civil proceedings" until adopted by statute in 1955. 983 S.W.2d at 668; see also State v. Vasques, 221 S.W.3d 514, 524 (Tenn. 2007). While our extensive research indicates that in

---

[6] "Although hedged about with a daunting array of substantive and procedural restrictions, coram nobis is the only means available in a limited category of situations for mounting a collateral attack on a final judgment." Prickett, 30 Santa Clara L. Rev. at 2.

this state writs of error coram nobis were used primarily in civil cases—similar to the use of the writ in other states—it appears that the writ, although rarely sought, was also available in criminal actions in Tennessee. As early as 1855, for example, this Court made the following observation: "the prisoner was again arrested, and on his petition the execution of the judgment was suspended by order of the circuit judge." Andrews v. State, 34 Tenn. 550, 551 (1855). The published summary of this case provides that the sentence of the defendant was superseded until the next term "upon the petition of the prisoner for a writ of error coram nobis." Id.[7]

## C. Statutory History in Tennessee

In 1858, the General Assembly codified the writ as applicable to civil cases.[8] The original language of the statute described its purpose as the "correction of a material error of fact, where the applicant has had no notice of the proceedings, or was prevented from making defenses by surprise, accident, mistake or fraud, without fault on his part." Dinsmore v. Boyd, 74 Tenn. 689, 696 (1881) (citing Code §§ 3110, 3116). Years later, in Green, this Court specifically addressed whether the statutory "writ of error coram nobis . . . lie[s] in criminal cases." Green, 216 S.W.2d at 306. The State argued, and the Court agreed, that "[a]ll of these Code sections . . . obviously undertake to regulate civil proceedings only [and that t]here is nothing in any of them which could have application to a criminal case." Id. Without referencing or distinguishing Andrews, this Court observed that there was "no judicial history [in this state] that [the writ of error coram nobis] ha[d] ever been used or allowed in a criminal case." Green, 216 S.W.2d at 307.

In 1955, the General Assembly created a statutory version of the writ of error coram nobis also applicable to criminal proceedings[9] but limited its use to the direct challenge of a conviction. In 1978, the General Assembly broadened the scope of the statute to permit collateral challenges to a final judgment in a criminal case based on newly discovered

---

[7] The actual body of the opinion, however, refers only to the "petition" without specifically identifying its nature. There were factual and evidentiary issues asserted in the claim, and the ultimate disposition of the case resulted in a new trial, supporting the publisher's reference to the petition as a writ of error coram nobis.

[8] The statute was enacted under Title I, "of Civil Actions," Part III, "of the Redress of Civil Injuries." Code of Tennessee §§ 3110 to 3118 (Return J. Meigs & William F. Cooper eds., E.G. Eastman & Co. 1858). The general statutes governing writs of error coram nobis are now codified at Tennessee Code Annotated sections 27-7-101 to -108 (2000).

[9] Act of Mar. 8, 1955, ch. 166, § 1, 1955 Tenn. Pub. Acts 639-40 (codified as amended at Tenn. Code Ann. § 40-26-105).

evidence.[10]  Accordingly, Tennessee Code Annotated section 40-26-105(b) now provides as follows:

> The relief obtainable by this proceeding shall be <u>confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case</u>, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding.  Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, <u>a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment</u>, had it been presented at the trial.

(Emphasis added).  In <u>Mixon</u>, this Court described the writ of error coram nobis, as codified in Tennessee Code Annotated section 40-26-105(b), as an extraordinary procedural remedy which rarely produces results favorable to a petitioner.  See <u>Mixon</u>, 983 S.W.2d at 673.  Nevertheless, its statutory terms provide an alternative procedural remedy when all other post-judgment remedies fail.  "'[K]nown more for its denial than its approval,'" <u>Vasques</u>, 221 S.W.3d at 524 (quoting <u>Mixon</u>, 983 S.W.2d at 666), the procedure survives as the lone means by which a court might rectify a recognized wrong when all other possible remedies are no longer available.  <u>Mixon</u>, 983 S.W.2d at 672; <u>see also</u> <u>United States v. Morgan</u>, 346 U.S. 502, 512 (1954).

The burden of proof on a petitioner for the grant of coram nobis relief is indeed heavy.  The statute confines review to errors outside of the record and not previously litigated.  Tenn. Code Ann. § 40-26-105(b).  Trial courts are required to grant a new trial based on newly discovered evidence only if

> (1) the trial court is reasonably well satisfied that the testimony given by the material witness was false and the new testimony is true; (2) the defendant was reasonably diligent in discovering the new evidence, or was surprised by the false testimony, or was unable to know the falsity of the testimony until after the trial; and (3) the jury might have reached a different conclusion had the truth been told.

---

[10] Act of Mar. 22, 1978, ch. 738, § 1, 1978 Tenn. Pub. Acts 658-59 (codified as amended at Tenn. Code Ann. § 40-26-105(b)).

Mixon, 983 S.W.2d at 673 n.17; Workman v. State, 41 S.W.3d 100, 104 (Tenn. 2001); see also Vasques, 221 S.W.3d at 525-26.

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the [Petitioner] is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence may have led to a different result.

Vasques, 221 S.W.3d at 527. Finally, as a general rule, newly discovered evidence which is merely cumulative or "serves no other purpose than to contradict or impeach" does not warrant the issuance of a writ. State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995).

Of further note, the statute of limitations for a petition seeking a writ of error coram nobis is one year from the final judgment. Tenn. Code Ann. § 40-26-105(a); see also Tenn. Code Ann. § 27-7-103. In Workman, this Court ruled that constitutional due process requires the tolling of a limitations period when a petitioner would otherwise be denied "an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." 41 S.W.3d at 102 (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)); see also Williams v. State, 44 S.W.3d 464, 465 (Tenn. 2001); Seals v. State, 23 S.W.3d 272 (Tenn. 2000).[11]

With the adoption of Rule 60 of the Tennessee Rules of Civil Procedure, which superseded coram nobis actions in civil cases,[12] the "anomalous result is that the writ of error coram nobis continues to be an available remedy in criminal actions" while, as observed in Mixon, "the civil writ of error coram nobis . . . has been abolished for [four decades]." Mixon, 983 S.W.2d at 668.

---

[11] The due process analysis requires a consideration of the governmental interests versus the private interests at issue. The governmental interest is "the prevention of stale and groundless claims," while the private interest is that the newly discovered evidence may have produced a different result. Workman, 41 S.W.3d at 103.

[12] See Tenn. R. Civ. P. 60.02, Advisory Comm'n Comments ("This rule supersedes chapter 7 of Title 27, T.C.A., dealing with the writ of error coram nobis . . . .").

## D. Other Jurisdictions' Application of
## Writ of Error Coram Nobis to Guilty Pleas

In 1954, the Supreme Court observed that there "are few cases where the power to consider a motion for coram nobis relief has been denied." Morgan, 346 U.S. at 510. At the federal level, therefore, the writ of error coram nobis, grounded in hundreds of years of common law, remains a valid remedy available to challenge a conviction based on a guilty plea. Id.; see also 16A Fed. Proc. L. Ed. § 41:603 (West 2011) (stating that an "invalid guilty plea resulting in a conviction and sentence has been held subject to challenge by a motion for a writ of error coram nobis"); 39 Am. Jur. 2d Habeas Corpus § 209 (2011) (explaining that "challenges [to guilty pleas] can be made by writ of coram nobis that the plea was not made knowingly or voluntarily"); 18 Am. Jur. Trials 1 § 17 (1971) (explaining that "[c]oram nobis is a proper remedy for relief from a conviction that followed a plea of guilty that was entered as a result of fraud, duress, or mistake"). The power to grant such relief stems from 28 U.S.C. § 1651, the all-writs section of the federal code.[13] Morgan, 346 U.S. at 506. In Morgan, where the defendant challenged a prior conviction based upon a guilty plea, the Court held that "no other remedy being then available . . . this motion in the nature of the extraordinary writ of coram nobis must be heard by the federal trial court." Id. at 512. In recognizing coram nobis as an avenue to challenge a conviction founded upon a guilty plea, the Supreme Court clearly expressed concern that unless such relief was afforded, no other remedy would be available.

The writ, likewise, has historically been available to challenge guilty-plea convictions in state courts. Because most states' post-conviction statutes or procedural rules offer the protections previously provided by coram nobis, the writ is often encompassed by broader post-conviction schemes than our own. See, e.g., Gross v. Commonwealth, 648 S.W.2d 853, 856 (Ky. 1983) (explaining that "[Kentucky Rule of Civil Procedure] 60.02 was enacted as a substitute for the common law writ of coram nobis"); State v. Blakesley, 989 A.2d 746, 751 (Me. 2010) (describing Maine's modern post-conviction statutes' replacement of the writ of coram nobis remedy); Morris v. State, 918 So. 2d 807, 808 (Miss. Ct. App. 2005) (opining that Mississippi's "post-conviction relief statutes explicitly replaced the writ of error coram nobis"). Nevertheless, in the numerous states that continue to recognize writs of error coram nobis as separate and distinct from other post-conviction remedies, guilty pleas can be challenged via the writ. See, e.g., Echols v. State, 125 S.W.3d 153, 156 (Ark. 2003); Skok

---

[13] 28 U.S.C. § 1651(a) (2006) states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

v. State, 760 A.2d 647, 662 (Md. 2000); State v. Brooks, 874 A.2d 280, 287 (Conn. Ct. App. 2005); People v. Antoniou, 872 N.Y.S.2d 756, 757 (N.Y. App. Div. 2009). Most importantly, at all times past and present, where a state has offered the writ of error coram nobis as a potential remedy in criminal matters, there has never been an outright bar against using the writ to challenge a conviction based on a guilty plea.[14]

## IV. Guilty Plea Proceeding as a Trial

The precise question presented in this case is whether the writ, as codified in Tennessee Code Annotated section 40-26-105(b), may be used to challenge a conviction based upon a guilty plea,[15] rather than a bench trial or a trial by jury. As stated, the statute does not define the term "trial."

In 1998, the Court of Criminal Appeals interpreted the statute in a manner consistent with common-law, permitting use of the writ to present newly discovered evidence as a means of demonstrating that a guilty plea was not voluntarily or knowingly entered. Newsome v. State, 995 S.W.2d 129, 133-34 (Tenn. Crim. App. 1998).[16] In Newsome, the defendant filed a writ of error coram nobis challenging his guilty plea based on newly discovered evidence. Id. at 132. The alleged new evidence was that the true perpetrator of the crime had confessed. Id. The Court of Criminal Appeals ruled that a coram nobis claim would allow Newsome to "present newly discovered evidence which would show that his plea was not voluntarily or knowingly entered." Id. at 134. The court explicitly "acknowledge[d] that should 'newly discovered evidence' [a]ffect the voluntariness of a guilty plea, a writ [of error coram nobis] may properly lie." Id. at n.6 (emphasis in original). More recently, however, in a few of its unpublished opinions, the Court of Criminal Appeals has questioned the correctness of the interpretation of Tennessee

---

[14] See, e.g., Wood v. State, 750 So. 2d 592 (Fla.1999); Reponte v. State, 556 P.2d 577 (Haw. 1976); People v. Andrus, 244 N.E.2d 161, 162 (Ill. 1969); State v. Hawkins, 51 P.2d 914, 914 (Kan. 1935); Dwyer v. State, 120 A.2d 276, 284 (Me. 1956); Baker v. State, 358 So. 2d 401 (Miss. 1978); State v. LeMay, 396 P.2d 83 (Mont. 1964); Hall v. Langlois, 276 A.2d 768, 770, 772 (R.I. 1971); State v. Plum, 378 P.2d 671, 673 (Utah 1963); State v. Schill, 286 N.W.2d 836, 842-45 (Wis. 1980); Duncan v. State, 169 So. 2d 439, 441 (Ala. Ct. App. 1964); People v. Chaklader, 29 Cal. Rptr. 2d 344, 345 (Cal. Ct. App. 1994); Arnold v. State, 552 S.W.2d 286, 291 (Mo. Ct. App. 1977); State v. Lee, 252 S.E.2d 225, 227-30 (N.C. Ct. App. 1979).

[15] Although the concurring opinion suggests that our holding makes the writ available to challenge a guilty plea on any ground, the issue we address here is whether the alleged new evidence affected the voluntary and knowing nature of the plea.

[16] See also Grant v. State, No. E2009-00311-CCA-R3-PC, 2010 WL 987123, at *2 (Tenn. Crim. App. Mar. 18, 2010); Blanton v. State, No. M2001-02421-CCA-R3-PC, 2003 WL 21766251, at *10 (Tenn. Crim. App. July 30, 2003); Demonbreun v. State, No. 01C01-9711-CR-00539, 1999 WL 632303, at *4 (Tenn. Crim. App. Aug. 19, 1999).

Code Annotated section 40-26-105(b) in <u>Newsome</u>. <u>See, e.g.</u>, <u>Stamey v. State</u>, No. E2009-00996-CCA-R3-CD, 2010 WL 481198, at *7 (Tenn. Crim. App. Feb. 11, 2010); <u>see also</u> <u>Ledford v. State</u>, E2010-01773-CCA-R3-PC, 2011 WL 1678069, at *5 (Tenn. Crim. App. May 4, 2011); <u>Ivy v. State</u>, No. W2010-00152-R3-CO, 2010 WL 3895404, at *1 (Tenn. Crim. App. Oct. 5, 2010).[17]

In our effort to resolve this inconsistency, we begin our analysis by reviewing the text of Tennessee Code Annotated section 40-26-105(b), which limits the writ "to matters that were not or could not have been litigated <u>on the trial</u> of the case." (Emphasis added). Similarly, in circumstances where the inmate demonstrates that he or she was without fault for failing to present evidence at the proper time, the statute permits the inmate to bring forward "evidence relating to matters which were litigated <u>at the trial</u>." (Emphasis added). Finally, the statute directs courts to decline the grant of relief based on the newly discovered evidence unless "such evidence may have resulted in a different judgment, had it been presented <u>at the trial</u>." (Emphasis added). These references to the term "trial" require us to address the question of what constitutes a "trial" for the purposes of Tennessee Code Annotated section 40-26-105(b).

While Tennessee Code Annotated section 40-26-105(b) makes numerous references to the term "trial," the statute neither defines nor articulates what constitutes a trial for purposes of the statute. Thus, what is intended by the use of the word trial is not clear and unambiguous. Because the language of the statute does not provide specific guidance, other sources may be used to assist in the statute's interpretation. <u>Parks</u>, 974 S.W.2d at 679.

Numerous authorities interpret the term trial broadly. <u>American Jurisprudence</u> explains that trial is the "judicial investigation and determination of the issues between the parties to an action before a competent tribunal." 75 Am. Jur. 2d <u>Trial</u> § 1 (West 2011). Another noted authority describes trial as the

> judicial examination and determination, in accordance with the law of the land, before a competent tribunal . . . of the issues between the parties to an action, whether they are issues of law or fact. The term "trial" includes all the steps taken in the case from its submission to the court or jury to the rendition of judgment.

---

[17] Tennessee Court of Criminal Appeals Rule 19(c) provides that "[a]n opinion of the Court that meets one or more of the standards in subsection (a), and that is not otherwise barred from publication by any of the criteria in subsection (b), shall be published only if a majority of the Court votes affirmatively in favor of publication."

88 C.J.S. Trial § 1 (West 2011) (footnotes omitted).  Black's Law Dictionary defines trial as a "formal judicial examination of evidence and determination of legal claims in an adversary proceeding."  Black's Law Dictionary 1543 (8th ed. 2004).  Various jurisdictions' interpretation of trial is similarly expansive.  See, e.g., Erickson v. Starling, 71 S.E.2d 384, 392 (N.C. 1952) (describing trial as the examination of the issues between the parties, for the purpose of determining such issues); Smith v. Mitchell, 148 P.3d 1151, 1155 n.2 (Ariz. Ct. App. 2006) (stating that a trial is the judicial examination of the issues between the parties); In re Conservatorship of Joseph W., 131 Cal. Rptr. 3d 896, 905 (Cal. Ct. App. 2011) (acknowledging that the meaning of the term trial can vary); Schiappa v. Ferrero, 767 A.2d 785, 789 (Conn. Ct. App. 2001) (explaining that the trial includes all steps taken in a case from its submission to the court to the rendering of judgment ); State v. Gonzalez, 493 N.W.2d 410, 412 (Wis. Ct. App. 1992) (defining trial as the "judicial examination of the issues between the parties").

Tennessee Rule of Criminal Procedure 11, adopted in 1978, governs the guilty plea process and lays out the detailed procedure by which trial courts conduct the plea process.[18]  Part of the procedure of Tennessee Rule of Criminal Procedure 11(b)(3) requires that "[b]efore entering judgment on a guilty plea, the court shall determine that there is a factual basis for the plea."  A valid best interest plea requires a factual basis.  Alford, 400 U.S. at 37, 38 n.10; Dortch, 705 S.W.2d at 689.  The significance of the procedural details of a guilty plea proceeding in Tennessee was made apparent in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), a case in which the trial court failed to ask the defendant a single question concerning his plea.  Recognizing the magnitude of these proceedings, this Court, quoting Boykin v. Alabama, 395 U.S. 238, 242 (1969), asserted that "a plea of guilty is more than an admission of conduct; it is a conviction."  Mackey, 553 S.W.2d at 339.  Because of the serious implications of a plea of guilt, the Court in Mackey held that prior to accepting a guilty plea, trial courts must confront the defendant in open court and not only inform him of the effects of his guilty plea, but also make determinations regarding the defendant's understanding and voluntariness of the plea.  Id. at 341.[19]  Failure to adhere to these strict requirements will result in the setting aside of a conviction based on such a plea.  See Rounsaville v. Evatt, 733 S.W.2d 506, 509 (Tenn. 1987).

---

[18] While the 1978 version of Rule 11 of the Tennessee Rules of Criminal Procedure is formatted somewhat differently than the current form, the substance of the rule is largely unchanged.

[19] Shortly after Mackey, the Tennessee Rules of Criminal Procedure were adopted.  David Raybin, Tennessee Practice: Criminal Practice and Procedure § 22.90 (1985).  Tennessee Rule of Criminal Procedure 11 is "substantially the same as the federal rule."  Tenn. R. Crim. P. 11, Advisory Comm'n Comments.

The precise nature of the proceedings surrounding guilty pleas required by Tennessee Rule of Criminal Procedure 11, as well as our rulings in Mackey and its progeny, demonstrate that trial courts should carefully address factual and legal issues before entering a judgment of conviction. As explained in Mackey, during these proceedings, trial courts may inquire about the evidence to be submitted. Mackey, 553 S.W.2d at 341. While these proceedings may not include some of the components traditionally associated with litigation, they fall within the broad interpretations of "trial" outlined above.

This Court's holding in State v. Todd, 654 S.W.2d 379 (Tenn. 1983), while in the context of double jeopardy, further indicates that a guilty plea proceeding qualifies as a trial. In Todd, the state offered the defendant a plea bargain, allowing him to plead to voluntary manslaughter; however, the trial judge rejected the agreement and refused to accept the plea. Id. at 380-81. The defendant was ordered to stand trial and was found guilty of second degree murder. Id. The defendant then challenged his conviction based on double jeopardy principles. Id. This Court, explaining that jeopardy only attaches when a defendant is put to trial, classified the issue in Todd as whether the defendant "was placed on trial in a plea hearing prior to the court's acceptance of the plea." Id. at 381-82 (internal quotation marks omitted). Ultimately, this Court concluded that because the plea agreement was not accepted by the trial court, no trial had occurred, and, in consequence, jeopardy had not attached. Id. at 382-83. Thus, our opinion suggested that the approval of the proposed agreement and the acceptance of the plea would have met the definition of a trial.

Because "the waiver of fundamental constitutional rights is implicated when an accused enters a plea of guilty," Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993), it is inappropriate, in our view, to trivialize a guilty plea proceeding by holding that it does not constitute a "trial." Statutes should be "construed as near to the rule and reason of the common law as may be." Snyder v. McEwen, 256 S.W. 434, 436 (Tenn. 1923). If this Court were to say that a guilty plea proceeding is not a trial and thus, not subject to the writ of error coram nobis, we would be the first to so hold, brushing aside centuries of tried and tested jurisprudence.

## V. The Adverse Effect of Barring Coram Nobis Actions After a Guilty Plea

Holding that a writ of error coram nobis is available to challenge a guilty plea also affords a petitioner a possible remedy where, otherwise, no remedy would be available. While relief under Tennessee's Post-Conviction Procedure Act is similar to that provided by a writ of error coram nobis, the two are not identical. The Post-Conviction Procedure Act is contained in Tennessee Code Annotated sections 40-30-101 to -124 (2006). Section 40-30-103 explains that "[r]elief under this part shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed

-14-

by the Constitution of Tennessee or the Constitution of the United States." The most common ground presented under the Post-Conviction Procedure Act is the denial of the effective assistance of counsel, as guaranteed by our state and federal constitutions. See Dellinger v. State, 279 S.W.3d 282, 292-96 (Tenn. 2009). The statute of limitations for post-conviction actions is "one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final." Tenn. Code Ann. § 40-30-102(a). Generally, courts may hear a post-conviction petition filed after the expiration of the statute of limitations if the "claim in the petition is based upon new scientific evidence establishing that the petitioner is actually innocent of the offense or offenses for which the petitioner was convicted." Tenn. Code Ann. § 40-30-102(b)(2).

There are distinctions between a post-conviction claim "based upon new scientific evidence establishing that the petitioner is actually innocent," id., and a petition for writ of error coram nobis. As explained in Vasques, in coram nobis proceedings, the trial court must only determine "whether the new evidence may have led to a different result," if all other requirements of the statute are met, in order to grant a new trial. 221 S.W.3d at 527; see also Tenn. Code Ann. § 40-26-105(b).

Facts sufficient to maintain a coram nobis action would not ordinarily meet the requisite standard for post-conviction relief. For example, years after a conviction, new information can arise that "may have" led to an acquittal had it been ascertainable at the time of trial. At the same time, defense counsel could have met the standard for effective assistance of counsel espoused in Strickland v. Washington, 466 U.S. 668, 687 (1984), because he previously had no reason to know, in the exercise of due diligence, that the newfound evidence was in existence. Therefore, there would be no basis for a post-conviction claim alleging a constitutional violation for ineffective assistance of counsel. Furthermore, because the information does not qualify as "scientific evidence establishing that the petitioner is actually innocent," Tenn. Code Ann. § 40-30-102(b)(2), the one-year statute of limitations would bar such a post-conviction action. As seen by this example, a writ of error coram nobis is the only potential remedy for those rare instances in which a petitioner may otherwise be wrongfully convicted of a crime.

Whether in the federal or state courts, when addressing claims based on the writ of error coram nobis and state post-conviction statutes, the focus has been on ensuring that defendants have a limited remedy to challenge convictions based on guilty pleas. When holding that coram nobis relief is a possible remedy to attack a guilty plea, the United States Supreme Court in Morgan based its decision on the fact that no other remedy was available. Morgan, 346 U.S. at 512. As the Court explained, a writ of error coram nobis was proper because "[o]therwise a wrong may stand uncorrected which the available remedy

-15-

would right." Id.; cf. Bob v. State, 10 Tenn. 173, 176 (1826) (explaining that there should be no wrong under our law without a remedy for redress). In those instances where post-conviction relief is procedurally barred or the facts do not support a post-conviction claim, erecting a barrier that would prevent writs of error coram nobis in the guilty plea context would leave courts without any means to do justice.[20]

A 1990 law review article, treating convictions based upon a guilty plea or a jury trial as the same, eloquently documents the underlying philosophy of the remedy:

> *Coram nobis* is an oddly titled vestige of the common law which has survived to the present day, not out of attachment to an archaic relic, but because it serves a purpose essential to the discovery of truth. The common law scope of the writ has suffered considerable reduction by the provision of statutory alternatives, leaving only a skeletal remnant of its former vitality, which was never robust. Relief may be exceedingly difficult to obtain. Yet the continued availability of *coram nobis*, however atrophied the residuum of its common law powers may be, must not be disparaged. Its very existence, however infrequent its actual use, is a reminder that it is never too late to correct some kinds of errors. *Coram nobis* is the ultimate recognition of fallibility in the adjudicatory process. Its very existence betokens our commitment to the principle that it is never too late to correct some injustices. The presence of *coram nobis* stands as a confirmation of the importance courts profess to place upon that value.

Prickett, 30 Santa Clara L. Rev. at 78.

## VI. Nature of the Evidence

When the Petitioner, in the case before us, filed his petition for writ of error coram nobis, he had already mounted an unsuccessful challenge to his guilty plea under the Post-Conviction Procedure Act. Part of the evidence in the post-conviction proceeding involved the same ballistic evidence that forms the basis of the petition for writ of error coram nobis in this case. Specifically, in the 2008 coram nobis hearing, the Petitioner alleged that prior to his 2001 plea, the State had failed to inform him that it had sent ballistic evidence to the

---

[20] A motion to withdraw a guilty plea is likewise inadequate, as the plea can only be withdrawn (1) before the sentence is imposed, or (2) after the sentence is imposed but before the judgment becomes final to prevent manifest injustice. Tenn. R. Crim. P. 32(f)(1)-(2) (2011). This is, of course, a very narrow window that does not afford the same protection that a writ of error coram nobis would.

FBI for testing.[21] The Petitioner testified in the post-conviction proceeding, however, that his trial counsel, prior to his pleading guilty, informed him that the ballistic tests had been performed on the bullet fragments and that those tests were inconclusive; trial counsel for the Petitioner likewise testified at the post-conviction hearing. Furthermore, a motion filed prior to the Petitioner's plea acknowledged that there had "been no conclusive matches between bullet fragments found at the scene of this alleged offense and those found in the body of Officer Gibson" and that "several fragments have been sent to the FBI in order to attempt to find matches between the two groups."

The writ of error coram nobis statute—Tennessee Code Annotated section 40-26-105(b)—requires that the evidentiary basis for the petition must be "newly discovered evidence." Even if newly discovered, evidence that is merely cumulative to other evidence in the record will not suffice for the granting of a petition for writ of error coram nobis. Hart, 911 S.W.2d at 375. The purpose of the writ is to bring to the court's attention some fact that was, even in the exercise of due diligence, previously unknown. Teague v. State, 772 S.W.2d 915, 920 (Tenn. Crim. App. 1988). To be considered "newly discovered," the evidence must have been unknown to the defendant at the time of the proceedings giving rise to his conviction. See Harris v. State, 301 S.W.3d 141, 160 (Tenn. 2010) (Koch, J., concurring). In Workman, for instance, the alleged newly discovered evidence was a medical x-ray, the type of which the petitioner had requested in discovery, but had not been provided by the State at the time of trial. Workman, 41 S.W.3d at 103. In essence, the petitioner in Workman had been under the impression that no such evidence existed, when, in fact, it did exist, and this Court held that such evidence was a valid basis for a coram nobis petition. Id. at 103-04; see also Freshwater v. State, 160 S.W.3d 548, 555-56 (Tenn. Crim. App. 2004) (holding that summary dismissal of the coram nobis petition was improper, where despite discovery requests for such evidence, the State did not provide the defendant with exculpatory witness statements).

On the other hand, a coram nobis petition will not lie where a petitioner was previously aware of the alleged "newly discovered evidence." See Cormia v. State, No. E2010–02290–CCA–R3–PC, 2011 WL 5027107, at *10 (Tenn. Crim. App. Oct. 21, 2011) (denying coram nobis relief where the petition was based, in part, on an issue that formed the basis of an earlier post-conviction claim); Young Bok Song v. State, No. M2010–02054–CCA–R3–CO, 2011 WL 2713738, at *3 (Tenn. Crim. App. July 13, 2011) (denying coram nobis relief where the petitioner was aware of the alleged new evidence at trial and raised the issue in the post-conviction court). In light of the testimony at the post-

---

[21] The Petitioner's original argument, as stated in his petition for writ of error coram nobis, was that despite the State's representation to the contrary, the State had not actually sent ballistic evidence to the FBI for testing.

conviction hearing and the contents of the motion filed prior to his plea, the Petitioner was clearly aware that the ballistic evidence had been tested and that the results were inconclusive. The Petitioner's assertion at the coram nobis proceeding that the State had failed to inform him that the evidence had been sent for testing is inconsistent with his previous testimony in the record, and the alleged "newly discovered evidence" does not qualify as new within the meaning of the coram nobis statute.

## Conclusion

While the writ of error coram nobis is a viable remedy to attack the knowing and voluntary nature of guilty pleas which serve as the basis for convictions, the results of the ballistic tests did not constitute "newly discovered evidence" as required by Tennessee Code Annotated section 40-26-105(b). Accordingly, the Petitioner is not entitled to relief. We affirm the judgments of the Court of Criminal Appeals and the trial court. Because the Petitioner is indigent, we tax the costs of this appeal to the State of Tennessee.

_____
GARY R. WADE, JUSTICE