IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 2, 2015

**DARELL AYERS v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Madison County**
**No. 13-497      Roy B. Morgan, Jr., Judge**

_____

**No. W2014-01963-CCA-R3-ECN  -  Filed August 17, 2015**

_____

In 2013, the Petitioner, Darell[1] Ayers, pleaded guilty to vehicle burglary, theft of property under $500, identity theft, and shoplifting.  The Petitioner was sentenced to four years on community corrections.  Subsequently, the trial court issued a warrant alleging that the Petitioner violated his community corrections sentence by being arrested for aggravated robbery and for failing to report this arrest to his community corrections officer.  After a hearing, the trial court revoked the Defendant's community corrections sentence.  In 2014, the Petitioner was acquitted of the aggravated burglary charge.  The Petitioner then filed a petition for a writ of error coram nobis, claiming that, had the evidence presented at the 2014 trial been made available to him at the revocation hearing, a different judgment would have been reached.  After a hearing, the coram nobis court found that error coram nobis relief was not available to challenge the revocation of probation pursuant to *Frederick Parks v. State*, No. W2013-01601-CCA-R3-ECN, 2014 WL 1767107 (Tenn. Crim. App., at Jackson, April 30, 2014).  On appeal, the Petitioner asserts that the coram nobis court erred when it dismissed his petition.  After a thorough review of the record and applicable law, we affirm the coram nobis court's judgment.

**Tenn. R. App. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which D. KELLY THOMAS, JR., and ROBERT L. HOLLOWAY, JR., JJ., joined.

George Morton Googe, District Public Defender; and Jeremy B. Epperson, Assistant Public Defender, Jackson, Tennessee for the appellant, Darell Ayers.

Herbert H. Slatery III, Attorney General and Reporter; David H. Findley, Senior Counsel; Jerry Woodall, District Attorney General; and Rolf G.S. Hazelhurst, Assistant District Attorney General for the appellee, State of Tennessee.

---

[1] The Petitioner's name is spelled "Darell" on the indictment in this case and in subsequent.  His name is spelled "Darrell" in other records.

# OPINION
## I. Facts and Procedural History

On October 7, 2013, the Petitioner pleaded guilty to vehicle burglary, theft of property under $500, identity theft, and shoplifting. The trial court placed him on community corrections for a period of four years. On December 4, 2013, the trial court issued a warrant for the Petitioner's arrest, alleging that the Petitioner had violated his community corrections conditions by: (1) being arrested for aggravated robbery; and (2) failing to report his arrest to his community corrections officer. On December 30, 2013, a hearing was held, during which the following evidence was presented: Mary Ann Porter testified that she was robbed on November 25, 2013. She stated that she was selling an old cell phone over the internet, and she planned to meet a potential buyer at an apartment complex. As she and the buyer were meeting in the parking lot to exchange the phone and money, the Petitioner approached her and said he wanted her "stuff." Ms. Porter declined to give anything to him, and the Petitioner pulled out a gun. Ms. Porter gave him her "stuff," and, as she did so, she looked at the Petitioner's face. The Petitioner said, "You keep looking at me in my face, I'm gonna shoot you."

Ms. Porter testified that, in addition to her "stuff," the Petitioner also took some of the purses in the buyer's car. Ms. Porter told the Petitioner that she did not have anything of value in her car and started to walk away. The Petitioner said, "I guess I'm gonna have to start shooting," and then he walked away. Ms. Porter identified the Petitioner in the courtroom. Ms. Porter testified that she thought the Petitioner looked familiar, and, when she went home after the robbery, she confirmed that they were linked through social media. Ms. Porter had a photograph of the Petitioner through their social media link, and she showed the photograph to detectives. Detectives then showed her a photographic lineup, and she identified the Petitioner in the lineup as the man who robbed her.

On cross-examination, Ms. Porter testified that she was going to sell the phone to the buyer at South Side Apartments. She stated that it was between 6:00 and 7:00 p.m. on November 25 and was dark when she met the buyer. She clarified, however, that there were lights in the parking lot. Ms. Porter testified that she had another girl in the car with her when she met with the buyer, and she stated that there were two people in the buyer's car.

Ms. Porter testified that, when the Petitioner approached her in the parking lot, he was wearing a black sweatshirt with the hood pulled over his head. She stated that the gun was in the pocket of his "hoodie," and he pulled it out with his left hand. She testified that it was a "short, black pistol-type" weapon. After the Petitioner walked away, Ms. Porter drove out of the parking lot and called 911 from a Walmart parking lot,

2

where she remained until police officers arrived. Ms. Porter testified that she was "positive" that it was the Petitioner who had robbed her that night.

Dawanika McClellan testified that, on November 25, 2013, she was with the Petitioner between 6:00 and 7:00 p.m. She explained that she and the Petitioner were either in Covington, Tennessee, or on the way to Memphis, Tennessee, but not in Jackson, Tennessee, where this robbery took place. On cross-examination, Ms. McClellan testified she, another friend, "Donovan," and the Petitioner drove to Memphis together in a rented vehicle. Ms. McClellan testified that they visited the Petitioner's friend's house, but she could not recall the friend's name. Ms. McClellan also could not recall where the friend's house was located, and she could not remember anything more about the trip to Memphis.

At the conclusion of the hearing, the trial court revoked the Petitioner's community corrections sentence, finding that Ms. McClellan's testimony was "vague" in terms of an alibi for the Petitioner. The trial court further found that, based on Ms. Porter's testimony, it was established by a preponderance of the evidence that the Petitioner had violated his community corrections sentence.

In a July 2014 trial, the Petitioner was acquitted of the aggravated robbery charge and all lesser-included offenses that arose out of the incident involving Ms. Porter. On August 20, 2014, the Petitioner filed a petition for a writ of error coram nobis. In his petition, he alleged that no proof was presented at the revocation hearing regarding his failure to report his arrest to his community corrections officer. He further alleged that numerous items provided in discovery for his July 2014 trial were not made available to him before his December 2013 revocation hearing. He contended that a different judgment would have been reached in his revocation hearing had the evidence been made available to him. The State responded that the Petitioner had failed to present a claim for cognizable relief pursuant to the error coram nobis statute. Citing *Parks*, the State contended that a writ of error coram nobis was "not available to challenge revocation of probation."

After a hearing, the coram nobis court issued an order on October 29, 2014, denying the petition. The coram nobis court found that, because a challenge to a probation revocation is not a cognizable error coram nobis claim, the petition had failed to state a claim for relief. It is from this judgment that the Petitioner appeals.

## II. Analysis

The Petitioner argues that the trial court erred when it dismissed his petition for a writ of error coram nobis because his newly discovered evidence entitles him to relief. He contends that a probation revocation hearing, although not a trial, is "much more adversarial in nature than a guilty plea proceeding" and that "fundamental liberties are at stake" during a revocation hearing. Thus, his due process rights were violated by his

inability to present exculpatory evidence that the State later made available at his trial. The State cites this Court's holding in *Parks* that coram nobis relief is not available in probation revocation cases and contends that the Petitioner has not provided any law to the contrary. *See Parks*, 2014 WL 1767107 at *5. Thus, the State contends that the coram nobis court's decision denying his petition should be affirmed. We agree with the State.

Tennessee Code Annotated section 40-26-105 (2012) provides:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

It is well-established that the writ of error coram nobis "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the coram nobis court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

The coram nobis court cited our earlier decision in *State v. Parks* as the basis for denial of the Petitioner's petition. In *Parks*, the petitioner contended that he had discovered new evidence, specifically a prosecutor's statements made at his revocation hearing, later alleged to be false. The petitioner argued that, had he known of the falsities, he would not have pleaded guilty to the violations that lead to his revocation. The State responded that a probation revocation is not a decision for which coram nobis relief is available, contending that a probation revocation hearing does not constitute a "trial" as defined by the coram nobis statute.

In our discussion of the issue, we reviewed case law addressing the meaning of a "trial" within the context of the coram nobis statute at Tennessee Code Annotated section 40-26-105(a). *See* T.C.A. § 40-26-105(a) (stating "if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial"). We stated the following:

In *Wlodarz v. State*, 361 S.W.3d 490 (Tenn. 2012), our Supreme Court addressed the issue of whether a guilty plea proceeding was a "trial" within the meaning of the coram nobis statute. *Id.* at 503-04. In so doing, the Court discussed the various meanings of the word "trial," and it held that, because "'the waiver of fundamental constitutional rights is implicated when an accused enters a plea of guilty,'" a guilty plea hearing is a "trial" within the meaning of the statute and thus subject to the writ of error coram nobis. *Id.* at 504.

In *State v. Coggins*, this Court conducted a similar analysis as to whether a probation revocation hearing is a "trial," but came to a different conclusion, stating the following:

> It is generally recognized that there is a distinction between probation violation proceedings and criminal trials." *State v. Jackson*, 60 S.W.3d 738, 743 n.5 (Tenn. 2001) (citing *Barker v. State*, 483 S.W.2d 586, 589 (Tenn. Crim. App. 1972)). Further, unlike a trial, "'[a] parole revocation proceeding is not an adversarial proceeding.'" *Barker*, 483 S.W.2d at 589 (quoting *United States ex rel. Sperling v. Fitzpartrick*, 426 F.2d 1161 (2d Cir.1970)). Under this analysis, a probation revocation hearing is not a "trial[.]"

*State v. Coggins*, No. M2008-00104-CCA-R3-CD, 2009 WL 482491, at *4 (Tenn. Crim. App., at Nashville, Feb. 25, 2009), *no Tenn. R. App. P. 11 filed*.

*Parks*, 2014 WL 1767107, at *5.

As such, we concluded that "a probation revocation, unlike the entry of a guilty plea, is not a "trial" within the meaning of the coram nobis statute. That statue, then, is not available to challenge a probation revocation." *Id.* Accordingly, we held that the petitioner had not stated a cognizable claim for coram nobis relief. *Id.*

In the present case, we similarly conclude that the Petitioner has not stated a cognizable claim for coram nobis relief.

### III. Conclusion

Based upon the foregoing reasoning and authorities, we affirm the coram nobis court's judgment.

_____

ROBERT W. WEDEMEYER, JUDGE