# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 28, 2014 Session

## DAVID HEARING v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Greene County**
**No. 11CR191     Thomas J. Wright, Judge**

---

**No. E2013-00640-CCA-R3-ECN-FILED-JUNE 3, 2014**

---

The petitioner, David Hearing, filed a petition for a writ of error coram nobis, seeking relief from his two convictions of felony murder and the accompanying life sentences. The coram nobis court denied relief, and the petitioner appeals. Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and JEFFREY S. BIVINS, JJ., joined.

Joseph O. McAfee, Greeneville, Tennessee, for the appellant, David Hearing.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; C. Berkeley Bell, District Attorney General; and Connie Trobaugh, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The petitioner was one of a group of people charged with two counts of felony murder, as a result of the shooting deaths of Ance "Pete" Pratt and his wife, Rebecca Pratt, at their home during the perpetration of an aggravated burglary. See David Hearing v. State, No. E2009-02430-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 829, 2010 WL 3837535, at *1-2 (Knoxville, Oct. 4, 2010); David Wayne Hearing v. State, No. E2006-00362-CCA-R3-PC, 2006 Tenn. Crim. App. LEXIS 997, at *2 (Knoxville, Oct. 24, 2006). The State filed a notice of intent to seek the death penalty. See Hearing, No. E2009-02430-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 829, at *2. On September 2, 2005, the petitioner pled guilty

to the charged offenses in exchange for concurrent sentences of life imprisonment.  Id.

Since entering his guilty pleas, the petitioner has unsuccessfully pursued multiple avenues of relief.  Initially, he filed a motion to withdraw his pleas because his trial counsel had misrepresented the length of his sentences; the motion was denied, and the denial was affirmed on appeal.  See id.; David Wayne Hearing v. State, No. E2007-00778-CCA-R3-PC, 2008 Tenn. Crim. App. LEXIS 105, at *1 (Knoxville, Feb. 22, 2008); Hearing, No. E2006-00362-CCA-R3-PC, 2006 Tenn. Crim. App. LEXIS 997, at *2.  Subsequently, the petitioner pursued post-conviction relief on the basis of the ineffective assistance of counsel and was again denied relief.  Hearing, No. E2009-02430-CCA-R3-PC, 2010 Tenn. Crim. App. LEXIS 829, at *1.  Next, the petitioner attempted to obtain habeas corpus relief to no avail.  David Hearing v. David Mills, Warden, No. W2011-01226-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 135, at *1-3 (Jackson, February 28, 2012).

Thereafter, on May 27, 2011, the petitioner filed a "Petition for a Writ of Certiorari or in the Alternative a Petition for Writ of Error Coram Nobis," which is the subject of the instant case.  The petitioner stated that the trial court's Rule 12 report[1] contained evidence that was never conveyed to him prior to his guilty pleas.  The petitioner acknowledged that his petition was untimely but alleged that the statute of limitations should be tolled on due process grounds.  He stated that he did not learn of the Rule 12 report until November 17, 2010, when he was provided a copy by his post-conviction counsel.  The petitioner contended that the newly discovered evidence "may establish actual innocence."  He further alleged that the evidence in the Rule 12 report may have affected the voluntariness of his plea and that if he had known of the information, he might have been more inclined to go to trial.

At the hearing on the petition, the petitioner testified that he was represented by post-conviction counsel from 2008 until October 2012.  On November 17, 2012, the petitioner received from counsel a package of materials, which included the Rule 12 report.  The petitioner filed the petition for a writ of error coram nobis approximately six months later.

---

[1]Our supreme court has explained:

> Tennessee Supreme Court Rule 12 requires a standardized report to be completed in all cases in which the defendant is convicted of first degree murder, including cases remanded by the appellate court for retrial or resentencing.  This requirement also applies to cases in which a defendant pleads guilty to first degree murder.  Rule 12 reports are returned to the Clerk of the Supreme Court.  A database of Rule 12 reports is available on CD-ROM.

State v. Pruitt, 415 S.W.3d 180, 213 n.21 (Tenn. 2013).

The petitioner said that the contents of the report surprised him. Specifically, the report reflected that "'[t]he victims were bound, gagged and held hostage for several hours before being shot.'" The report also reflected that a pathologist had testified the victims were tortured because they "bled out," did not die from a single wound, and had many superficial wounds. The petitioner said that no pathologist testified on his behalf. The report further named three co-defendants, namely Hugh Williams, Michael Sellers, and LaTonya Crockett. The petitioner said that he had never heard of these individuals.

On cross-examination, the petitioner acknowledged that he was charged with first degree murder committed during the perpetration of an aggravated burglary. The petitioner asserted that the victims had purchased marijuana from him and that he was at the victims' residence for only thirty minutes on the day of the offense. He said that he was at the home from 7:30 p.m. to 8:03 p.m., in order to collect the money he was owed. The petitioner denied that the victims were bound and gagged while he was at the residence and maintained that the victims were alive when he left.

The petitioner conceded that a .45 caliber pistol was found in his truck and that testing determined the bullets found in the victims' bodies were fired from that gun; however, he maintained that no fingerprints were found on the gun. The petitioner said that his cellular telephone records from the day of the offense reflected that he made a call from Tennessee at 3:11 p.m. and at 11:12 p.m., from Virginia at 8:48 p.m. and at 10:28 p.m., and from North Carolina at 12:43 a.m. According to the petitioner, the records confirm the route he followed when he left the victims' house. He acknowledged, however, that the victims' residence was located near the Virginia state line and that there were "multiple cell towers, Tennessee, Virginia, . . . and you can ping off any of them."

The petitioner said that at his guilty plea hearing, the trial court asked the State for the factual basis for the pleas, and the State responded, "'We will submit that later.'" He contended that the only factual basis that was submitted later was the Rule 12 report. He complained that the facts in the Rule 12 report were not the facts "submitted" to him when he pled guilty. The petitioner acknowledged that at the guilty plea hearing, defense counsel waived a formal presentation of the evidence and stipulated that most of the evidence was presented at pretrial hearings, conferences, and in the statements of co-defendants.

The petitioner said that he was willing to plead guilty to first degree murder in exchange for a sentence of fifty-one years to be served at thirty percent. In the alternative, he was willing to enter a guilty plea to facilitation of first degree murder. The State asked the petitioner if he was actually innocent, and he responded, "To a plea bargain is whether you're innocent or just in the interest is irrelevant with the facts that had they been held

hostage, I would be willing to go to trial, yes, sir."

On redirect, the petitioner said that a receipt from Cox Market, which was located twelve to seventeen minutes from the victims' house, showed that the victims left the market at 7:12 p.m. The petitioner's cellular telephone records indicated that he made a call from Virginia at 8:48 p.m. The petitioner alleged that, at a minimum, the drive from the victims' house to Virginia took forty-five minutes. He contended, therefore, that he could not have participated for hours in the restraint and torture of the victims. The petitioner acknowledged that he had faced the death penalty; nevertheless, he said that if he had known the "evidence that's alluded to in the Rule 12 report," it would have affected his decision whether to plead guilty or to go to trial.

Virginia Gass, Judge John Dugger's secretary, testified that at the time of the petitioner's guilty pleas, she was the secretary for Judge James E. Beckner. Ms. Gass said that she prepared the Rule 12 report for Judge Beckner to sign. She said that blank copies of the report were given to the defense and the State. They were to complete the forms and return them to Ms. Gass. Upon receipt of the forms, the trial court compiled the answers, and Ms. Gass then typed the answers. Subsequently, Ms. Gass discovered that she had inadvertently "cut and paste[d]" answers from the Rule 12 report for the Donnie Joe Hensley case onto the petitioner's Rule 12 report. Specifically, the co-defendants named in the petitioner's Rule 12 report, namely Williams, Sellers, and Crockett, were Hensley's co-defendants and had no relation to the petitioner's case. Additionally, the references to torture and to the testimony of a pathologist were also from the Hensley case. Ms. Gass said that after she typed the petitioner's Rule 12 report, it was not submitted to either the State or the defense for review.

On cross-examination, Ms. Gass acknowledged that Hensley's Rule 12 report did not reflect that the victims were held, bound, and gagged for hours before being shot; therefore, that error was not caused by "cut and paste." She explained that the statement that the victims were bound, gagged, and held hostage was taken from the form filled out by the State. She said that the "cut and paste" errors were in the sections of the report dealing with the accomplices and the pathologist.

Teddy Collingsworth, a criminal investigator for the District Attorney General's Office, testified that he investigated the shooting death of Ance and Becky Pratt, which occurred on May 24, 2001. He said that the receipt from Cox and Wright Market was found at the Pratts' residence. The market was about seventeen miles from the victims' residence, and the drive would take approximately twenty minutes. Collingsworth interviewed the proprietor of the market and learned that the time noted on the receipt was not accurate. He explained that the timing was "off" by "[a]pproximately an hour." In other words, it was

"too fast," and "when it says 7 it was 6."  As a result, the State decided not to use the proprietor as a witness.  Collinsworth said that the drive from the victims' residence to Virginia would take approximately twenty-five minutes.

As exhibits to the hearing, the State submitted the statements of the petitioner's co-defendants: Hilario Cardenas, Donald Ray Jones, and Jose Rivas.  In each of the statements, the co-defendants said that the petitioner participated in binding and shooting the victims and burglarizing their house. The statements further reflected that after leaving the victims' residence, the perpetrators went from Tennessee to Virginia and then to North Carolina.  As an additional exhibit, the State submitted a letter to the petitioner from trial counsel, which was written on July 28, 2005, prior to the petitioner's guilty plea hearing.  In the letter, trial counsel stated:

> [T]he cell phone records corroborate your involvement.  Our attack on the cell phone records is to argue that others borrowed your cell phone and made the calls.  As you know, the cell phone records track the path that was taken from Tennessee to Virginia down through North Carolina on the way to Louisiana. This would corroborate Leah and Gus' testimony, if he were to testify that this is the path taken after the murders.  This would corroborate Leah's testimony that you called her and advised her of your whereabouts.

The coram nobis court held that due process required the tolling of the statute of limitations and denied the State's motion to dismiss.  The court found that the references to accomplices and a pathologist in the Rule 12 report were errors that were inadvertently made when the report was prepared.  Accordingly, the court found that those references could have easily been discovered and were not newly discovered evidence. Additionally, the court said:

> I don't think that you would have done anything different if you had had the Rule 12 report information regarding the allegation that the deceased victims were held for hours at the time you entered your plea.
>
> Further, I don't think that it's evidence.  That report is not evidence and although it raises – raised issues there is not any proof before the Court that the people that were the victims of the murder were or weren't held hostage for several hours.

The court also stated, "I don't think it makes any difference whether it was hours or minutes

because if it's a felony murder, it's a felony murder whether you were the actual guy with the gun or not." The court said that the State had overwhelming evidence of the petitioner's guilt, which was the reason the petitioner decided to plead guilty and avoid the death penalty. Accordingly, the court denied the error coram nobis petition. On appeal, the petitioner challenges this ruling.

## II. Analysis

The writ of error coram nobis, which originated in common law five centuries ago, "'allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced.'" State v. Wlodarz, 361 S.W.3d 490, 496-97 (Tenn. 2012) (quoting State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999)). The writ, as first codified in Tennessee in 1858, was applicable to civil cases. Id. at 498. In 1955, a statutory version of the writ of error coram nobis was enacted, making the writ also applicable to criminal proceedings. Id. In general, the writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." Mixon, 983 S.W.2d at 672.

Currently, the writ is codified in Tennessee Code Annotated section 40-26-105:

> The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Our supreme court has held that a conviction pursuant to a guilty plea falls within a broad interpretation of a "trial" for the purposes of the aforementioned statute. Wlodarz, 361 S.W.3d at 503.

Our supreme court outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

> [T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result.

State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" Id. (quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 WL 2477530, at *13 (Tenn. Crim. App. at Nashville, Oct. 7, 2005)). However, there are limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. See, e.g., State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

> [a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

Id. (citations omitted). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. Id.

A writ of error coram nobis must be filed within one year after the judgment becomes final in the trial court. Tenn. Code Ann. §27-7-103. Clearly, the instant petition was filed well beyond the one-year statute of limitations. Nevertheless, the one-year statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012).

Our supreme court has stated, "In determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process

requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010).

The coram nobis court found that the statute of limitations should be tolled and that the petitioner timely filed his petition after receiving the Rule 12 report. As we have noted, the purpose of a Rule 12 report is to assist in reviewing proportionality in death penalty cases and is compiled following the conclusion of the trial. The petitioner concedes that the Rule 12 report is not evidence; however, he asserts that the facts in the report would lead to new evidence. We disagree. The proof at the hearing reflected that the report had been available to the petitioner since it was completed on October 11, 2005. The information in the report that the petitioner contends is "newly discovered" included the names of accomplices and facts regarding the testimony of a pathologist about the torture of the victims before their deaths. As the coram nobis court found, the information in the report concerning accomplices and a pathologist was not correct and resulted from a mistake that was explained by the judge's assistant. Therefore, the report was not "newly discovered evidence" that would entitle the petitioner to coram nobis relief.

### III. Conclusion

In sum, we conclude that the coram nobis court did not err by denying the petitioner coram nobis relief. Therefore, we affirm the judgment of the coram nobis court.

_____
NORMA McGEE OGLE, JUDGE