IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 7, 2014

## ALPHONZO CHALMERS v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 98-09236      Chris Craft, Judge**

---

**No. W2014-00377-CCA-R3-ECN  - Filed February 26, 2015**

---

A Shelby County Criminal Court Jury convicted the petitioner, Alphonzo Chalmers, of first degree murder, and the trial court imposed a sentence of life imprisonment in the Tennessee Department of Correction.  Thereafter, the petitioner filed a petition for writ of error coram nobis, arguing that newly discovered mental health records entitled him to a new trial.  The coram nobis court summarily denied the petition, and the petitioner appeals.  Upon review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN and TIMOTHY L. EASTER, JJ., joined.

James E. Thomas, Memphis, Tennessee, for the appellant, Alphonzo Chalmers.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffrey D. Zentner, Assistant Attorney General; and Amy P. Weirich, District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

The record before us reflects that the petitioner was convicted of first degree murder in 1999.  The petitioner appealed his conviction and sentence, and this court affirmed the judgment of the trial court in April 2001.  State v. Alfonzo Chalmers, No. W2000-00440-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 245 (Jackson, Apr. 4, 2001).  The petitioner timely filed a petition for post-conviction relief, which the trial court dismissed.  This court affirmed the dismissal in June 2013.  Alphonzo Chalmers v. State, No.

W2002-02270-CCA-R3-PC, 2003 Tenn. Crim. App. LEXIS 533 (Jackson, June 13, 2003).

On July 31, 2013, the petitioner filed the instant petition for writ of error coram nobis, alleging that he had obtained newly discovered evidence that was not discoverable at the time of his trial. The petitioner stated that his mother had recently obtained his mental health records from the Memphis Mental Health Institute (MMHI) after the petitioner signed a release of records form. The petitioner contended that the records refute the testimony of Dr. Rokeye S. Farooque and Dr. Samuel Craddock, who testified at his trial. The petitioner maintained that the records reflect that he had hallucinations and was paranoid and that if the jury had known of these problems, the outcome at trial would have been different. The petitioner further alleged that the records were withheld by the State in violation of Brady v. Maryland, 373 U.S. 83 (1963).

The coram nobis court found that the petition was not timely and should be dismissed. Additionally, the court stated that even if the petition were timely, the petitioner's claim had no merit. The court cited this court's opinion in the petitioner's direct appeal, wherein this court summarized the testimony of Dr. Craddock and Dr. Farooque, which included the records from the MMHI. The coram nobis court noted that both doctors had concluded that the petitioner was malingering. Dr. Farooque also concluded that the petitioner's problems resulted from his abuse of cocaine and alcohol. The court held that the records were not newly discovered evidence and "did not make any difference at the petitioner's trial." The court observed that the records could have been easily obtained by the petitioner prior to trial. Additionally, the court found that the State had not violated Brady.

On appeal, the petitioner challenges this ruling.

## II.  Analysis

The writ of error coram nobis, which originated in common law five centuries ago, "'allowed a trial court to reopen and correct its judgment upon discovery of a substantial factual error not appearing in the record which, if known at the time of judgment, would have prevented the judgment from being pronounced.'" State v. Wlodarz, 361 S.W.3d 490, 496-97 (Tenn. 2012) (quoting State v. Mixon, 983 S.W.2d 661, 666-67 (Tenn. 1999)). The writ, as first codified in Tennessee in 1858, was applicable to civil cases. Id. at 498. In 1955, a statutory version of the writ of error coram nobis was enacted, making the writ also applicable to criminal proceedings. Id. In general, the writ "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." Mixon, 983 S.W.2d at 672.

Currently, the writ is codified in Tennessee Code Annotated section 40-26-105:

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Our supreme court outlined the procedure that a trial court considering a petition for a writ of error coram nobis is to follow:

[T]he trial judge must first consider the newly discovered evidence and be "reasonably well satisfied" with its veracity. If the defendant is "without fault" in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result.

State v. Vasques, 221 S.W.3d 514, 527 (Tenn. 2007). In determining whether the new information may have led to a different result, the question before the court is "'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" Id. (quoting State v. Roberto Vasques, No. M2004-00166-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 1100, at *36-37 (Nashville, Oct. 7, 2005)). However, there are limits to the types of evidence that may warrant the issuance of a writ of error coram nobis. See, e.g., State v. Hart, 911 S.W.2d 371, 375 (Tenn. Crim. App. 1995). Aside from the fact that the evidence must be both admissible and material to the issues raised in the petition,

[a]s a general rule, subsequently or newly discovered evidence which is simply cumulative to other evidence in the record or serves no other purpose than to contradict or impeach the evidence adduced during the course of the trial will not justify the granting of a petition . . . when the evidence . . . would not have resulted in a different judgment.

Id. (citations omitted). Generally, a decision whether to grant a writ of error coram nobis rests within the sound discretion of the trial court. Id.

A writ of error coram nobis must be filed within one year of the date the judgment becomes final in the trial court. Tenn. Code Ann. §27-7-103. "The statute of limitations is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." State v. Harris, 301 S.W.3d 141, 145 (Tenn. 2010) (citing Mixon, 983 S.W.2d at 670). The instant petition was filed well beyond the one-year statute of limitations. Nevertheless, the one-year statute of limitations may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. Wilson v. State, 367 S.W.3d 229, 234 (Tenn. 2012).

Our supreme court has stated, "In determining whether tolling of the statute is proper, the court is required to balance the petitioner's interest in having a hearing with the interest of the State in preventing a claim that is stale and groundless." Id. In general, "'before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner.'" Id. (quoting Burford v. State, 845 S.W.2d 204, 208 (Tenn. 1992)). Our supreme court described the three steps of the "Burford rule" as follows:

> "(1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are 'later-arising,' determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim."

Id. (quoting Sands v. State, 903 S.W.2d 297, 301 (Tenn. 1995)). "Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Harris, 301 S.W.3d at 145.

On appeal, the State concedes that it did not raise the statute of limitations as an affirmative defense, noting that the coram nobis court ruled on the motion before the State had a chance to respond. See Harris v. State, 102 S.W.3d 587, 593 (Tenn. 2003) (stating that "the State bears the burden of raising the bar of the statute of limitations as an affirmative defense"); see also Marcus Terry v. State, No. W2014-00684-CCA-R3-ECN, 2014 Tenn. Crim. App. LEXIS 1175, at *5 (Jackson, Dec. 30, 2014) (stating that a coram nobis court

should not have dismissed the petition based on timeliness before the State had responded to the petition). The State argues that, in any event, the trial court correctly dismissed the petition because the petitioner failed to establish that he was without fault in failing to discover the mental health records and because the records contained nothing that might have led to a different outcome at trial. We agree with the State.

The evidence the petitioner attached to his petition was a one page "CSU treatment summary and discharge plan," which stated that the petitioner was a "client" of "MTMHC." According to the report, the petitioner was referred to MMHI, and was admitted on May 18, 1993. He was discharged on May 27, 1993. The report further stated that when the petitioner was admitted, he was "in an agitated & combative state." The petitioner presented as "violent, very impulsive, paranoid & disorganized." Additionally, the report said that the petitioner's "[p]resenting problems on admission to CSU" were "poor coping skills, hallucinations, paranoid thoughts, [and] agitation."

At trial, Dr. Farooque, a psychiatrist at the Middle Tennessee Mental Health Institute, testified that the petitioner had undergone an inpatient evaluation four twenty-four days. Chalmers, No. W2000-00440-CCA-R3-CD, 2001 Tenn. Crim. App. LEXIS 245, at *10-11. As part of Dr. Farooque's evaluation, she reviewed and evaluated records from Western Mental Health Institute and MMHI where the petitioner had received treatment. Id. at *11. She stated that the petitioner had been prescribed anti-psychotic medication at the two institutions and that she continued the medications. Id. Dr. Farooque also said that the petitioner was prescribed anti-psychotic drugs based upon his complaint of hearing voices. Id. At the time, however, Dr. Farooque and Dr. Craddock saw no signs of mental illness, and she questioned the validity of his complaints. Id.

The petitioner maintained that his mother was able to obtain the discharge plan report after he signed a release form. No evidence indicates that the petitioner would not have been able to obtain the records prior to trial. See State v. Thomas D. Taylor, Nos. E2011-00500-CCA-R3-CD and E2011-02114-CCA-R3-PC, 2012 Tenn. Crim. App. LEXIS 1068, at *70-71 (Knoxville, Dec. 21, 2012) (stating that medical records were not newly discovered evidence when the records were available prior to trial); Paul Graham Manning v. State, No. M2007-00374-CCA-R3-CO, 2008 Tenn. Crim. App. LEXIS 109, at *6 (Nashville, Feb. 7, 2008) (stating that medical records were not newly discovered evidence when the existence of the records was known by counsel and the defendant at the time of trial). Moreover, as the coram nobis court found, the issue of the petitioner's mental health was litigated at trial. The petitioner's trial counsel was obviously aware of the petitioner's mental health records; accordingly, the petitioner should have been aware of them as well. Further, the mental health records show nothing new or inconsistent with the evidence adduced at trial. Accordingly, we conclude that the trial court did not err by denying the

petition for writ of error coram nobis.

### III.  Conclusion

Finding no error, we affirm the judgment of the coram nobis court.

_____
NORMA MCGEE OGLE, JUDGE