IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 2, 2015


## CLARK DERRICK FRAZIER v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Robertson County**
**No. 06-0350     John H. Gasaway, III, Judge**

_____

**No. M2014-02374-CCA-R3-ECN – July 1, 2015**

_____

The Petitioner, Clark Derrick Frazier, challenges the denial of his petition for writ of error coram nobis.  On appeal, the Petitioner argues that, had he known about the results from the DNA analysis performed on items found at the scene, he would have elected not to plead guilty.  After a review of the record and applicable law, we conclude that the Petitioner failed to prove that the results from the DNA analysis were newly discovered evidence or that he was without fault in failing to present the evidence at the proper time.  Additionally, we conclude that, even if the evidence was newly discovered, the Petitioner failed to establish that it may have resulted in a different judgment.  Accordingly, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR. J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and D. KELLY THOMAS, JR., JJ., joined.

Jonathan A. Garner, Springfield, Tennessee, for the Appellant, Clark Derrick Frazier.

Herbert H. Slatery III, Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; John W. Carney, District Attorney General; and Jason White, Assistant District Attorney General, for the Appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

*Evidence Underlying Guilty Plea*

The Petitioner was convicted of second degree murder following a guilty plea. On appeal following the denial of post-conviction relief, this court summarized the facts supporting the Petitioner's conviction as follows:

> Petitioner was indicted in count one of the indictment for first degree premeditated murder and in count two for first degree felony murder. The State withdrew count three of the indictment charging Petitioner with assault. On March 9, 2007, Petitioner entered a plea of guilty to the lesser included offense of second degree murder in count one of the indictment, and the State entered a nolle prosequi as to count two. Pursuant to the terms of the negotiated plea agreement, Petitioner was sentenced as a Range I, standard offender, to twenty-five years. The transcript of the guilty plea submission hearing does not contain a recitation of the State's factual basis in support of Petitioner's conviction. The trial court observed during the hearing that a sufficient factual basis had been developed during pre-trial hearings, but the transcript of these hearings [is] not included in the record. The indictment, however, alleges that Petitioner repeatedly stabbed the victim, Rosario Salas Angel, during a robbery causing the victim's death.

Clark Derrick Frazier v. State, No. M2008-01303-CCA-R3-PC, 2009 WL 1272278, at *1 (Tenn. Crim. App. May 5, 2009), perm. app. denied (Tenn. Aug. 31, 2009).

Additional facts regarding the offense are found in the transcript of the Petitioner's second preliminary hearing,[1] which is included in the record for the instant appeal. Testimony at the preliminary hearing established that the Petitioner engaged in an altercation with the victim, during which the Petitioner pinned the victim to the ground. Witnesses saw the Petitioner strike the victim. As one person walked away from the scene, he encountered a police vehicle and told the officers that the victim needed their help. The officers arrived on the scene almost immediately and observed the Petitioner walk away from the scene and the victim fall to the ground, covered in blood. Officers interviewed the Petitioner, and the Petitioner confessed to stabbing the victim in self-

---

[1] The record reflects that, after the Petitioner was bound over to circuit court, his case was remanded to general sessions court for a second preliminary hearing.

defense. In a second interview, the Petitioner admitted to stealing the victim's wallet during the incident.

*Evidence in Error Coram Nobis Proceeding*

On June 15, 2011, the Petitioner filed a pro se Petition for Writ of Error Coram Nobis ("the Petition") alleging, among other things, that he was entitled to a new trial because he was not aware, prior to his plea, that items collected from the crime scene had been tested for DNA and that the Petitioner's DNA was not found on some of the items.[2] Counsel was appointed, and a "Memorandum of Coram Nobis" was filed. In that memorandum, the Petitioner averred that, had the results of the DNA tests "been known and available" to the Petitioner, he would have proceeded to trial instead of entering a guilty plea.

At the coram nobis hearing, the Petitioner acknowledged that a knife, a shirt, a pair of shorts, and paper towels were collected from the crime scene. All four items had blood on them. Prior to entering a guilty plea, the Petitioner participated in a hearing in general sessions court where the State sought to obtain samples of the Petitioner's DNA to compare with the blood found on the items collected from the scene. The trial court ordered the Petitioner's DNA to be collected. The Petitioner reported that he knew DNA tests had been performed on the knife, shirt, and shorts and that results had been given to trial counsel.

The Petitioner stated that, at the time of his guilty plea, he knew his DNA had not been found on the shirt. However, the Petitioner claimed that he did not discover the DNA results from the bloody paper towels showing that an unknown female's DNA had been found on the paper towels until he had filed his petition for post-conviction relief.

On cross-examination, the Petitioner stated that, prior to his guilty plea, he knew the knife and shirt had been found on the scene. He also knew that the bloody paper towels had been collected from the same location where the knife was found. He recalled that the trial court ordered samples of his DNA to be taken to compare to the items and that tests had been performed on all the items. However, the Petitioner stated that he was not aware that an unknown female's DNA was found on the bloody paper towels prior to his plea because he "didn't pay attention to it."

---

[2] The Petition also include claims that the State failed to disclose evidence as required by Brady v. Maryland, 373 U.S. 83 (1963), that the Petitioner did not knowingly and intelligently waive his Miranda rights when questioned by the police, and that the Petitioner was denied his Sixth Amendment right to effective assistance of counsel. However, at the coram nobis hearing, the Petitioner proceeded solely on his claims regarding the "newly discovered" DNA evidence.

On redirect examination, the Petitioner stated that he did not know about the DNA results from the paper towels before his plea "because [he] didn't know it mattered at all." When asked if trial counsel had shared the DNA results with him, the Petitioner responded, "It had never been brought up, it had never been in a hearing about a paper towel, have a hearing to get whose it is, nothing." He stated that he did not see any of the lab work from the Tennessee Bureau of Investigation until after he had entered his guilty plea.

Trial counsel testified that she represented the Petitioner along with a senior attorney in her firm, who had since passed away. Additionally, they had investigators helping them prepare the Petitioner's defense. She stated that the defense team had received and reviewed all of the discovery in the case months before the Petitioner entered his guilty plea. Trial counsel recalled that the State filed a motion to obtain the Petitioner's DNA to compare to DNA on items found at the crime scene, which the trial court granted. Results of the DNA comparison tests revealed that the victim's blood was on the knife, the Petitioner's blood was on the shorts, an unknown female's DNA was found on the bloody paper towels, and there was insufficient DNA on the shirt for analysis. All of these results were combined in the same report and given to the defense team.

Trial counsel stated that the Petitioner could read very well and was "very involved" in his defense. She explained that, whenever the defense team received information from the State, they made copies of "every single thing" and mailed the copies to the Petitioner. Then, during the next visit with the Petitioner, trial counsel and investigators would discuss the discovery material with the Petitioner. Trial counsel recalled that the defense team discussed the evidence with the Petitioner many times because the Petitioner had a selective memory and would tend to forget about pieces of evidence, such as his confession to police.

Trial counsel stated that the defense team knew that the bloody paper towels contained an unknown female's DNA and that they shared this information with the Petitioner. However, she stated that the DNA results from the bloody paper towel did not have much effect on the evidence against the Petitioner. She noted that the Petitioner had been charged with felony murder and he had confessed to the police that he was robbing the victim of his wallet at the time of the incident. The defense team had filed a motion to suppress the confession, but the motion was denied. Additionally, there was evidence that the Petitioner was holding the knife that inflicted the wounds that ultimately caused the victim's death. Further, two eye-witnesses, Stephanie Hanson and the Petitioner's co-

defendant, Erin Harris,[3] were cooperating with the State, and the defense team anticipated that they would testify against the Petitioner at trial. Finally, no witness was able to place any female near the victim at the time he was injured, and the Petitioner was the only person close enough to the victim to use the knife to cause the victim's injuries. Therefore, trial counsel felt that the unknown female's DNA on the bloody paper towels was inconsequential to the overall case.

On cross-examination, trial counsel admitted that she did not recall any specific conversations where she discussed the DNA results from the bloody paper towels with the Petitioner. However, she stated that the defense team discussed every piece of evidence with the Petitioner.

In a ruling from the bench, the coram nobis court denied the Petitioner's request for relief. Specifically, the coram nobis court noted that the Petitioner was arguing that he did not know *and could not know* about the results of the DNA test of the bloody paper towels. However, trial counsel testified that the defense team had sent the Petitioner every piece of evidence they received during discovery. Additionally, the Petitioner admitted that, if he received the report of the DNA results about the paper towels, he did not pay any attention to it. Finally, the coram nobis court found that, in light of all the other evidence against the Petitioner, the Petitioner failed to prove that introduction of the evidence may have resulted in a different judgment. This timely appeal followed.

## Analysis

On appeal, the Petitioner argues that the DNA results from the bloody paper towels and the shirt constitute newly discovered evidence and that such evidence may have resulted in a different outcome had the Petitioner known about the results prior to entering his guilty plea. The State contends that the Petitioner failed to show that the DNA evidence was newly discovered or that it may have resulted in a different judgment. We agree with the State.

A writ of error coram nobis is an "extraordinary procedural remedy," filling only a "slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citation omitted). Tennessee Code Annotated section 40-26-105(b) provides that coram nobis relief is available in criminal cases as follows:

---

[3] Trial counsel referred to this witness only by "Ms. Harris." However, after a review of the record, we believe trial counsel was referring to the Petitioner's co-defendant and girlfriend at the time of the offense, Erin Harris.

The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.

Even though the language of the statute uses the term "trial," our supreme court has held that the writ of error coram nobis is available to challenge a guilty plea. Wlodarz v. State, 361 S.W.3d 490, 503-04 (Tenn. 2012).

Unlike the grounds for reopening a post-conviction petition, the grounds for seeking a petition for writ of error coram nobis are not limited to specific categories. See Harris v. State, 102 S.W.3d 587, 592 (Tenn. 2003). "Coram nobis claims may be based upon any 'newly discovered evidence relating to matters litigated at the trial' so long as the petitioner establishes that he or she was 'without fault' in failing to present the evidence at the proper time." Id. at 592-93. Coram nobis claims are "singularly fact-intensive," are not easily resolved on the face of the petition, and often require a hearing. Id. at 593.

"[I]n a coram nobis proceeding, the trial judge must first consider the newly discovered evidence and be 'reasonably well satisfied' with its veracity. If the defendant is 'without fault' in the sense that the exercise of reasonable diligence would not have led to a timely discovery of the new information, the trial judge must then consider both the evidence at trial and that offered at the coram nobis proceeding in order to determine whether the new evidence *may have* led to a different result." State v. Vasques, 221 S.W.3d 514, 527 (emphasis in original). The decision to grant or deny coram nobis relief rests within the sound discretion of the trial court. Id. at 527-28.

Turning to the instant case, we will first address the Petitioner's claim that the DNA analysis of the shirt constituted newly discovered evidence that may have resulted in a different judgment. The Petitioner admitted during the coram nobis hearing that he knew about the results of the DNA analysis of the shirt prior to entering his guilty plea. As such, the results of the DNA analysis of the shirt is not newly discovered evidence, and the Petitioner was not "without fault" in failing to present the evidence at the proper time. Therefore, the Petitioner is not entitled to coram nobis relief on this claim.

Likewise, the Petitioner failed to show that the DNA analysis on the bloody paper towels was "newly discovered evidence" or that he was "without fault" in failing to

- 6 -

present the evidence at the proper time. Trial counsel's testimony clearly establishes that the results from the DNA analysis for all four items—the knife, shirt, shorts, and bloody paper towels—were sent to the defense team at the same time. The defense team also made copies of every piece of discovery they received and sent the copies to the Petitioner. Additionally, the defense team met with the Petitioner multiple times and went over the evidence with him in detail. The Petitioner admitted that he did not pay attention to the results of the DNA analysis on the bloody paper towels when he received copies of the discovery. Therefore, we conclude that the results from DNA analysis of the bloody paper towels are not "newly discovered evidence" and the Petitioner was not "without fault" for failing to present the evidence at the proper time.

Moreover, the Petitioner has failed to establish that, had the evidence from the bloody paper towels been presented at the proper time, it may have led to a different result. The Petitioner was charged with felony murder. He confessed to police that he was robbing the victim of his wallet when the victim was stabbed, and the defense team was unable to suppress the Petitioner's confession. Additionally, evidence established that the Petitioner was holding the knife that caused the victim's fatal wounds, and two eye-witnesses to the murder were expected to testify for the State. Based on this evidence, we cannot conclude that evidence about an unknown female's DNA found on bloody paper towels near the scene may have affected the outcome of the Petitioner's case. Accordingly, we hold that the coram nobis court did not abuse its discretion in denying relief.

## Conclusion

For the aforementioned reasons, the judgment of the coram nobis court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE