IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs June 6, 2017

## CHRISTOPHER A. WILLIAMS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. 96-07434     Paula Skahan, Judge**

_____

**No. W2017-00137-CCA-R3-ECN**

_____

After three trials, the Petitioner was convicted of attempted aggravated robbery and felony first degree murder, and the trial court sentenced him to life in prison. The Petitioner appealed his convictions, filed a petition for post-conviction relief, and filed multiple petitions for writs of habeas corpus relief. No relief was granted. In 2015, the Petitioner filed a petition for a writ of error coram nobis, alleging an anonymous informant's statement was newly discovered evidence. The Petitioner conceded that his petition was untimely but asked the coram nobis court to toll the statute of limitations because, he asserted, the State withheld the statement. The coram nobis court declined to toll the statute of limitations, and it dismissed the petition as time-barred. We affirm the coram nobis court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the Court, in which THOMAS T. WOODALL, P.J., and NORMA MCGEE OGLE, J., joined.

Christopher A. Williams, Henning, Tennessee, Pro Se.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Pamela Stark, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts**

This case arises from the victim's murder on August 19, 1995. In relation to this murder, the Petitioner, who was fourteen years old at the time, was indicted for first degree murder, felony murder, and attempted aggravated robbery. *State v. Christopher A. Williams*, No 02C01-9711-CR-00427, 1998 WL 424558, at *1 (Tenn. Crim. App., at

Jackson, July 28, 1998), *perm. app. denied* (Tenn. Feb. 16, 1999). The State tried the Petitioner as an adult, and his first trial resulted in a mistrial. *Id.* After the second trial, the jury could not reach a verdict on either of the murder charges but convicted the Petitioner of attempted aggravated robbery. *Id.* The Petitioner appealed the sufficiency of the evidence, and this court affirmed his conviction. *Id.*

The State tried the Petitioner a third time on the murder charges. *State v. Christopher A. Williams*, No. 01C01-9711-CR-00440, 1998 WL 855455, at *2 (Tenn. Crim. App., at Jackson, Dec. 10, 1998), *perm. app. denied* (Tenn. Apr. 26, 1999). Briefly, and according to the Petitioner's statement, this crime occurred when:

[The Petitioner] and a man called "Black" were walking together when they saw a man walking toward them. "Black" said to the [Petitioner], "let's rob that man" and handed the [Petitioner] a pistol. The [Petitioner] called the man over to him and when the man approached, he

put the pistol up and pointed at this man's upper body. [The victim] pushed the pistol in my hand down toward his legs, then I pulled the trigger and he was shot in the leg. Then [the victim] started running towards the church. I blasted the gun three (3) more times. Then the [victim] was still running and I ran out of bullets and the [victim] kept running to the side of the church and the [victim] fell face down in the grass on the side of the church. I saw him on the ground crawling[.]

Later that night Michael Byrd found the victim and called 911. The victim, Jerry McNeal, was dead upon the arrival of emergency personnel. Dr. Wendy Gunther performed the autopsy on the victim and testified that he had suffered three gunshot wounds: one to his lower left leg and two to his back. She testified that either of the gunshot wounds to the victim's back was sufficient to kill him.

*Williams*, 1998 WL 855455, at *1. The jury convicted the Petitioner of felony murder, and the trial court sentenced him to life in prison. *Id.* The Petitioner appealed, contending that his statement to the police should have been suppressed, that the evidence was insufficient to support his conviction, and that his third trial constituted double jeopardy or an unfair prosecution. *Id.* This court affirmed the trial court's judgment. *Id.*

In 1999, the Petitioner filed a petition for post-conviction relief. *Christopher A. Williams v. State*, No. W2003-00676-CCA-R3-PC, at *1 (Tenn. Crim. App., at Jackson, May 6, 2004), *perm. app. denied* (Tenn. Sept. 13, 2004) (designating case not for

citation).  The Petitioner filed two petitions for writs of habeas corpus.  In the first, the Petitioner claimed he had been denied the right to counsel and that his privilege against self-incrimination had been violated.  *See Christopher A. Williams v. Tony Howerton, Warden*, No. E2012-00932-CCA-R3-HC, at *1 (Tenn. Crim. App., Knoxville, Oct. 8, 2012), *no Tenn. R. App. P. 11 application filed*.  On appeal, this court affirmed the summary dismissal of the Petitioner's petition.  *Id.*

The Petitioner filed a second petition for habeas corpus relief in which he alleged that his felony murder conviction was void because the trial court imposed a sentence of life without the opportunity of parole.  *Christopher A. Williams v. State of Tennessee*, No. W2013-00555-CCA-R3-HC, 2013 WL 5493568, at *1 (Tenn. Crim. App., at Jackson, Sept. 30, 2013), *perm. app. denied* (Tenn. Dec. 10, 2013).  This court affirmed the trial court's summary dismissal of the petition because the judgment reflected an effective sentence of life, with an eligibility for release after serving a minimum of 51 years of incarceration.  *Id.*

In 2015, the Petitioner filed a petition for a writ of error coram nobis.  In his petition, he alleged that the State had deliberately withheld from the defense an anonymous informant's interview and that the interview was "material" to the preparation of his case.  He noted that the informant inculpated the Petitioner and said: (1) that she overheard the Petitioner "clicking pistols" and making comments asking whether the police would find out; (2) that the Petitioner had shot the victim; (3) that the Petitioner asked again if the police would find out; (4) that she had been informed that the Petitioner had tried to rob the victim; and (5) that she overheard someone tell the Petitioner to "put the gun up and stop playing with it," indicating that the gun was a .25 caliber automatic gun with a clip.  He asserts that, had he known about the interview, he would have pleaded guilty to the offense and accepted the State's plea offer of twenty years in prison.  He asserted that the failure to disclose this interview completely undermined his defense.  He acknowledged that his petition was not timely filed but asked the coram nobis court to toll the statute of limitations.

The coram nobis court issued an order summarily dismissing the petition.  The court found:

> A robbery gone wrong.  According to the Petitioner's own statement, he shot the victim, Jerry McNeal, after McNeal resisted [the] Petitioner's robbery attempt and fled.  At the age of fourteen [the] Petitioner was convicted of felony murder and sentenced to life with parole.  After numerous failed appeals, this matter now comes before this court on a **WRIT OF ERROR CORAM NOBIS** filed by the [P]etitioner, alleging that key inculpatory evidence was withheld from [the] Petitioner's attorney

3

during the time leading up to his trial. [The] Petitioner claims that, had he known of this additional evidence against him, he would have accepted a plea deal instead of going to trial.

After careful consideration of the law and the facts and considering the overwhelming evidence of [the] Petitioner's guilt, this court finds that [the] Petitioner has no basis for relief under a Writ of Error *Coram Nobis*. For this reason and those enumerated below, the Writ of Error *Coram Nobis* is hereby **DENIED**.

. . . .

[The] Petitioner filed this petition approximately fifteen years after the final disposition of his case. [The] Petitioner's writ of error *coram nobis* is time barred and is thereby dismissed. However, even if [the] Petitioner had timely filed this petition it would still be denied. [The] Petitioner is unable to convincingly relate why the new evidence would have resulted in a different outcome at *the original trial*. . . . The "new evidence" brought forth by [the] [P]etitioner was not new in fact, was merely cumulative, and would not have changed the outcome at trial.

[The] Petitioner's claim that had he known of this evidence he would have decided to accept the state's offer of twenty years is unconvincing and irrelevant. In light of all the evidence that [the] Petitioner did have knowledge of (notably his own statement) there is no reason to believe that an anonymous tip would have convinced him to accept a plea deal. The Supreme Court of Tennessee has ruled that a writ for error *coram nobis* cannot be used as a procedural mechanism for collaterally attacking a guilty plea. *Frazier v. State*, 495 S.W.3d 246, 253 (Tenn. 2016) (abrogating *Wlodarz v. State*, 361 S.W.3d 490 (Tenn. 2012)). It follows that a writ of error *coram nobis* cannot be used to collaterally attack one's own decision to abstain from entering a guilty plea. This type of second guessing does not constitute a basis for relief under the writ of error *coram nobis*.

The coram nobis court went on to find that the State had not violated *Brady v. Maryland,* 373 U.S. 83 (1963), because the information requested or withheld was unfavorable to the Petitioner. It was therefore not material because it would not have resulted in a different outcome at trial.

It is from this judgment that the Petitioner now appeals.

## II. Analysis

On appeal, the Petitioner contends that the coram nobis court erred when it dismissed his petition for writ of error coram nobis. He asserts that the anonymous interview was material and that the State improperly failed to disclose it to him. He further asserts that the interview qualifies as newly discovered evidence and that, had the State disclosed the interview, he would have pleaded guilty. The State counters, first, that the petition is time-barred and, second, that the petition does not provide proper grounds for coram nobis relief because the "new evidence" might not have resulted in a different judgment at trial. We agree with the State.

Tennessee Code Annotated section 40-26-105 (2012) provides:

> There is hereby made available to convicted defendants in criminal cases a proceeding in the nature of a writ of error coram nobis, to be governed by the same rules and procedure applicable to the writ of error coram nobis in civil cases, except insofar as inconsistent herewith. . . . Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which are litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at trial.

It is well-established that the writ of error coram nobis "is an extraordinary procedural remedy . . . [that] fills only a slight gap into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1999). Generally, a decision whether to grant a writ rests within the sound discretion of the coram nobis court. *See State v. Hart*, 991 S.W.2d 371, 375 (Tenn. Crim. App. 1995). We, therefore, review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

A petition for a writ of error coram nobis must be filed within one year of the judgment becoming final in the trial court. T.C.A. § 27-7-103 (2015). This statute of limitations "is computed from the date the judgment of the trial court becomes final, either thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010); *see Mixon*, 983 S.W.2d at 670 ("[W]e reject the contention . . . that the statute does not begin to run until the conclusion of the appeal as of right proceedings."). In the present case, the judgment became final in late 1998 or early 1999. The Petitioner did not file this petition for writ of error coram nobis until 2015, more than fifteen years later.

The one-year statute of limitations for a petition for writ of error coram nobis may be tolled on due process grounds if a petition seeks relief based upon newly discovered evidence of actual innocence. *Harris*, 301 S.W.3d at 145. In determining whether the statute should be tolled, the court must balance a petitioner's interest in having a hearing with the State's interest in preventing a claim that is stale and groundless. *Id.* Generally, "before a state may terminate a claim for failure to comply with . . . statutes of limitations, due process requires that potential litigants be provided an opportunity for the presentation of claims at a meaningful time and in a meaningful manner." *Burford v. State*, 845 S.W.2d 204, 208 (Tenn. 1992). The *Burford* rule requires three steps:

> (1) determine when the limitations period would normally have begun to run; (2) determine whether the grounds for relief actually arose after the limitations period would normally have commenced; and (3) if the grounds are "later arising," determine if, under the facts of the case, a strict application of the limitations period would effectively deny the petitioner a reasonable opportunity to present the claim.

*Sands v. State*, 903 S.W.2d 299, 301 (Tenn. 1995). As a general rule, the claim at issue must not have existed during the limitations period to trigger due process consideration. *Seals v. State*, 23 S.W.3d 272 (Tenn. 2000). Discovery of or ignorance to the existence of a claim does not create a "later-arising" claim. *See Brown v. State*, 928 S.W.2d 453, 456 (Tenn. Crim. App. 1996); *Passarella v. State*, 891 S.W.2d 619, 635 (Tenn. Crim. App. 1994).

In the case under submission, the evidence presented by the Petitioner is not evidence of "actual innocence," but, instead, evidence supporting his guilt. The Petitioner gave a statement admitting that he had shot the victim. The Petitioner did, in fact, shoot and kill the victim. The Petitioner chose to take the case to trial, knowing that he had shot and killed the victim and knowing that he had given a statement to police admitting that he had shot the victim. We first conclude that any evidence that an anonymous caller to a tip hotline may have heard statements inculpating the Petitioner is not proof of actual innocence. We further conclude that such evidence is not proper grounds for relief pursuant to a petition for writ of error coram nobis. Finally, we conclude that the Petitioner has not proven that the anonymous informant's statement amounted to a violation of *Brady v.* Maryland, 373 U.S. 83, 87 (1963), in that the evidence is not favorable to him or material. The Petitioner is not entitled to relief.

### III. Conclusion

In accordance with the foregoing reasoning and authorities, we affirm the coram nobis court's judgment.

_____
ROBERT W. WEDEMEYER, JUDGE