IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs June 4, 2024

## CURTIS KELLER v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 10-02756      Carlyn L. Addison, Judge
_____

**No. W2023-01188-CCA-R3-ECN**
_____

Pro se petitioner, Curtis Keller, appeals the summary dismissal of his second petition seeking error coram nobis relief.[1]  Upon our review, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Terrell Tooten (on appeal), Memphis, Tennessee, and Curtis Keller (appellate brief), Tiptonville, Tennessee, Pro Se.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General; Steve Mulroy, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Petitioner was charged and convicted of several offenses stemming from two home invasion robberies in Collierville, Tennessee, in May of 2010, see State v. Keller, No. W2012-00825-CCA-R3-CD, 2013 WL 3329032, at *1-2 (Tenn. Crim. App. June 27, 2013), perm. app. denied (Tenn. Dec. 10, 2013), and in Germantown, Tennessee, in June of 2008, see State v. Keller, No. W2012-01457-CCA-R3-CD, 2013 WL 6021332, at *1 (Tenn. Crim. App. Nov. 6, 2013), remanded (Tenn. Feb. 11, 2014), for which the Petitioner received a total effective sentence of 510 years in confinement.  As we understand the pro se petition, this Petitioner seeks coram nobis relief from his convictions stemming from his

---

[1] At some point after the filing of the pro se coram nobis petition and completion of briefing in this matter, the Petitioner retained counsel.  His representation has no bearing on the merits of this appeal.

Germantown convictions based on alleged newly discovered evidence in the form of an "[i]nvestigative report dated January 30, 2023 . . . revealing that [Tennessee Bureau of Investigation ("TBI")] Forensic Scientist Qadriyyah Debnam, whom was responsible for testing, analyzing, and testifying at trial in regards to the DNA evidence procured from the ski mask used to convict the petitioner, 'was terminated on February 12, 2010 . . . for the good of services.'"

The proof at the Petitioner's trial established that the Petitioner organized the robbery, which was perpetrated with the assistance of seven accomplices. Keller, 2013 WL 6021332, at *4-9. According to the testimony of two of his accomplices, the Petitioner masterminded the crime and, serving as the "lookout," drove to the home in a blue truck. Id. The other seven accomplices arrived in a stolen white van, broke into the home, and terrorized and robbed the seven occupants. Id. at *5, 7-8. After one victim managed to call the police, the accomplices fled in the van, throwing various pieces of evidence from the vehicle as they led law enforcement on a lengthy, high-speed chase. Id. at *4, 9. When the van crashed, five of the men were apprehended, and one co-defendant was taken into custody trying to retrieve his vehicle from a rendezvous point the following day. Id. at *6, 8. One of the co-defendants sustained an injury from broken glass and left DNA at the scene, tying him to the crime. Id. at *5.

Two of the co-defendants implicated the Petitioner and testified about his involvement at trial. Id. at *4-9. Furthermore, a blue truck tied to the Petitioner was visible on footage from police vehicles involved in the high-speed chase. The Petitioner's involvement was also established by DNA analysis. A ski mask recovered from the getaway van was analyzed for DNA, and a partial profile was obtained. Id. at *10. A DNA sample taken from the Petitioner in May 2011 was subsequently matched to the profile on the ski mask, and this evidence was introduced at trial. Id. As relevant here, Dr. Debnam testified as a special agent forensic scientist who worked at the TBI's Memphis crime laboratory. She obtained a sample of DNA off of a ski mask that was sent to her from the Nashville crime laboratory. She testified that this sample was a "mixed" profile, meaning that it likely contained the DNA of more than one individual, but she was able to isolate a single individual's DNA from that mixture. She testified that the DNA profile of this unknown subject was kept in the TBI's records. Lawrence James, another special agent forensic scientist for the TBI, analyzed a sample of DNA represented to him as having been taken from the Petitioner on May 27, 2011, and determined that it was a match with a DNA profile already on file that had been discovered by Dr. Debnam on a ski mask. Id. at *10.

This court affirmed the Petitioner's convictions on direct appeal, and after our supreme court remanded, this court again affirmed the Petitioner's convictions. State v. Keller, No. W2012-01457-CCA-R3-CD, 2014 WL 4922627, at *6 (Tenn. Crim. App. Sept. 29, 2014) (affirming convictions in light of State v. White, 362 S.W.3d 559 (Tenn. 2012),

and State v. Cecil, 409 S.W.3d 599 (Tenn. 2013)). On March 3, 2015, the Petitioner filed a timely pro se petition for post-conviction relief and his first petition for writ of error coram nobis. Keller v. State, No. W2020-00590-CCA-R3-PC, 2021 WL 2886338, at *2 (Tenn. Crim. App. July 9, 2021). With the assistance of counsel, the Petitioner amended the coram nobis petition and alleged that the State erroneously "proceeded as though they did not have [the Petitioner's] DNA sample" despite a newly discovered 2009 report that showed that the State indeed had a DNA sample from the Petitioner and had matched that sample to the DNA found on a ski mask. Keller v. State, No. W2019-01652-CCA-R3-ECN, 2021 WL 1699277, at *3-4 (Tenn. Crim. App. Jan. 27, 2021), perm. app. denied (Tenn. May 14, 2021). The coram nobis court summarily dismissed the petition, "conclud[ing] that the 2009 report contained the same information as the 2010 report . . . [and] was merely cumulative[] and that it would not have resulted in a different judgment." Id. at *3.

The Petitioner appealed the summary dismissal of his first coram nobis petition, and this court affirmed. Id. at *1-5. We noted that "the limitations period expired in 2013 and that the petition was not filed until December 2018." Id. at *5. We further concluded that "[t]he evidence which the Petitioner has discovered is the very definition of cumulative evidence[.]" Id. In rejecting the Petitioner's argument that the ski mask was necessary to corroborate the accomplice's testimony, we observed that "the ski mask was not the sole corroborating evidence; the State also introduced evidence that a blue pickup, connected by other evidence to the Petitioner, had momentarily blocked Detective Jason Heath's pursuit of the white getaway van at the scene of the crime." Id.

Trial counsel testified at the Petitioner's January 2020 post-conviction evidentiary hearing and acknowledged that he did not interview Doctor Debnam or Special Agent James before trial or subpoena the TBI's file on the DNA testing, explaining that he "didn't view the DNA attachment to the mask as a significant issue." Keller, 2021 WL 2886338, at *3. He had worked with Agent James in prior cases and "found him to be a pretty straight shooter" and "had no reason to doubt that [he] . . . was being straightforward about his testing" in this case. Id. Trial counsel did not retain a DNA expert to assist in the Petitioner's defense or retest the ski mask because he "had no reason to question [the] results" of the State's testing and did not deem the ski mask a significant piece of evidence. Id. He explained that the ski mask was found in the get-away van, that the State did not allege that the Petitioner was ever in the van or at the crime scene and that the absence of the Petitioner's DNA on the ski mask would not have contradicted the State's theory of prosecution. Trial counsel said that he believed the outcome of the case hinged on the credibility of the co-defendant witnesses. Id.

In rejecting the Petitioner's claim that the post-conviction court erred in denying the Petitioner's motions for continuance to allow him time to have an independent DNA test

- 3 -

of the ski mask and to allow him to re-subpoena Doctor Debnam to testify at the evidentiary hearing, this court determined that the ski mask was not critical to the State's case. We further concluded that the State prosecuted the Petitioner under a theory of criminal responsibility and, at no point, alleged that the Petitioner wore a ski mask or was in the get-away van during the robbery. Id. at *7. Consequently, even if additional testing contradicted the State's finding of the Petitioner's DNA on the ski mask, the Petitioner would not be entitled to post-conviction relief, and the Petitioner cannot show that a continuance of the hearing would have reasonably resulted in a different outcome of the post-conviction proceeding. Id.

We additionally concluded that the post-conviction court did not err in finding that the Petitioner had "ample time to seek independent DNA testing of the ski mask prior to his January 2020 evidentiary hearing." Id. at *8. As relevant to the issues raised herein, we stated:

> The [P]etitioner initiated this post-conviction proceeding in March 2015, and current counsel had represented the [P]etitioner in this case since November 2017. Current counsel also represented the [P]etitioner throughout his coram nobis proceedings, which case also involved a claim related to the DNA evidence on the ski mask. The [P]etitioner's failure to seek additional DNA testing of the ski mask during the nearly five years that his post-conviction case was pending does not constitute "unforeseeable circumstances render[ing] a continuance a manifest necessity." Tenn. Sup. Ct. R. 28, § 8(B).

> Similarly, the post-conviction court did not abuse its discretion by denying the [P]etitioner's motion for continuance to allow him to re-subpoena Doctor Debnam. The post-conviction court found that Doctor Debnam's potential testimony was irrelevant to the issues raised in the post-conviction petition, and the record supports that finding. The [P]etitioner asserts that Doctor Debnam may have testified that it was possible for the ski mask to have been contaminated before her testing it for the presence of DNA. Even if Doctor Debnam's potential testimony is as the [P]etitioner suggests, that testimony would not result in a different outcome of the post-conviction proceeding. As stated above, the ski mask was not critical to the State's theory of prosecution. At most, Doctor Debnam's potential testimony would cast doubt on the veracity of the State's DNA testing of the ski mask. Because this court has already determined that other evidence sufficiently corroborated the testimony of the accomplices at trial, see Keller[], [2021 WL 1699277, at*]7-8, the [P]etitioner cannot establish that he was

- 4 -

prejudiced by the post-conviction court's denial of his motion for continuance to subpoena Doctor Debnam.

Id. at *8.

On May 24, 2023, the Petitioner filed the instant petition seeking a writ of error coram nobis. The petition asserts, in relevant part, that the alleged newly discovered evidence "is crucial because it reveals what the jury was never informed: that Mrs. Debnam had been terminated by the TBI 'for the good of the service,' two years prior to trial." It further states that "[t]his information which reveals her neglect and fraudulent behaviors, during the same time frame as the [P]etitioner [sic] case, which led to her termination would have been useful to the jury in its decision-making abilities during deliberations and might have raised reasonable doubt in their minds in regard to the issue of the [P]etitioner's guilt." The Petitioner attached several exhibits to the petition, including the judgments of conviction, a January 30, 2023 Blackwatch Investigation and Mitigation investigative report, excerpts of Dr. Debnam's trial testimony, various computer printouts purporting to challenge Dr. Debnam's testing methodology, a March 1, 2023 Affidavit of Private Investigator Samantha Spencer, and a TBI Match Detail Report.

Regarding the timeliness of the petition, the Petitioner averred that he "has exerted due diligence in locating and procuring said evidence which shows that he was without fault in failing to present said evidence at the proper time prescribed by statute." The Petitioner further alleged that he had "exerted due diligence" by hiring a private investigator service to investigate the circumstances involving the testing and analysis of the ski mask. He argued "[d]ue process concerns require the tolling of the statute of limitations in order for the petitioner to be allowed 'an opportunity for the presentation of claims at a meaningful time and a meaningful manner.'" The Petitioner claimed the "newly or subsequently discovered evidence helps prove [his] probable innocence, [and] a tolling of the statute of limitations is warranted."

On August 8, 2023, the coram nobis court issued an order denying relief without a hearing. Without addressing the timeliness of the petition, the order provides that the Petitioner's petition for writ of error coram nobis is "without merit." The court reasoned that "the alleged 'crucial' newly discovered evidence is not such that would necessitate an evidentiary hearing nor should counsel be appointed." The court further noted that the "information [the Petitioner] now insists would have altered [the] verdict, will not." The Petitioner filed a notice of appeal on August 21, 2023, and this case is now properly before this court for review.

**ANALYSIS**

- 5 -

The Petitioner contends that the coram nobis court abused its discretion in failing to make any findings of fact or conclusions of law in its "informal order denying the [Petitioner's] petition for writ of error coram nobis." In response, the State contends summary dismissal was proper because the instant petition was filed more than a decade after the limitations period expired, and the Petitioner has failed to establish that equitable tolling is warranted. Upon our review, we agree with the State and conclude that the Petitioner is not entitled to relief.

A writ of error coram nobis is available to convicted defendants. Tenn. Code Ann. § 40-26-105(a). However, a writ of error coram nobis is an "extraordinary procedural remedy" that "fills only a slight gap into which few cases fall." State v. Mixon, 983 S.W.2d 661, 672 (Tenn. 1999) (citing Penn v. State, 670 S.W.2d 426, 428 (Ark. 1984)). "The purpose of this remedy 'is to bring to the attention of the [trial] court some fact unknown to the court, which if known would have resulted in a different judgment.'" State v. Hart, 911 S.W.2d 371, 374 (Tenn. Crim. App. 1995) (quoting State ex rel. Carlson v. State, 407 S.W.2d 165, 167 (Tenn. 1966)). Relief by petition for writ of error coram nobis is provided for in Tennessee Code Annotated section 40-26-105. The statute provides, in pertinent part:

> (b) The relief obtainable by this proceeding shall be confined to errors dehors the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for a new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different judgment, had it been presented at the trial.
>
> (c) The issue shall be tried by the court without the intervention of a jury, and if the decision be in favor of the petitioner, the judgment complained of shall be set aside and the defendant shall be granted a new trial in that cause. . . .

Tenn. Code Ann. § 40-26-105(b), (c).

The decision to deny a petition for writ of error coram nobis on the grounds of subsequently or newly discovered evidence rests within the sound discretion of the trial court, which this court will not disturb absent an abuse of discretion. Id. § 40-26-105. In order to qualify as "newly discovered evidence" for the purposes of a writ of error coram nobis, the proffered evidence must be (1) evidence of facts existing, but not yet ascertained,

at the time of the original trial, (2) admissible, and (3) credible. Nunley v. State, 552 S.W.3d 800 (Tenn. 2018).

A petition for a writ of error coram nobis must be filed within one year after the challenged judgment becomes final. Tenn. Code Ann. § 27-7-103. The petition is subject to being summarily dismissed if it does not show on its face that it has complied with the one-year statute of limitations, and such compliance is an essential element of a coram nobis claim. Nunley, 552 S.W.3d at 828. To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after the expiration of the limitations period. Id. 828-829. If the coram nobis petition does not show on its face that it has been filed within the one-year statute of limitations, the petition must set forth with particularity facts demonstrating that the prisoner is entitled to equitable tolling of the statute of limitations:

> To be entitled to equitable tolling, a prisoner must demonstrate with particularity in the petition: (1) that the ground or grounds upon which the prisoner is seeking relief are "later arising" grounds, that is grounds that arose after the point in time when the applicable statute of limitations normally would have started to run; [and] (2) that, based on the facts of the case, the strict application of the statute of limitations would effectively deny the prisoner a reasonable opportunity to present his or her claims. . . . A prisoner is not entitled to equitable tolling to pursue a patently non-meritorious ground for relief.

Id. at 829.

"Whether due process considerations require tolling of a statute of limitations is a mixed question of law and fact, which we review de novo with no presumption of correctness." Id. at 830. Upon review of a petition for a writ of error coram nobis for timeliness, an appellate court must first determine whether the petitioner "asserted the claim in a timely manner and, if not, whether he has demonstrated that he is entitled to equitable tolling of the statute of limitations as provided in [Tennessee Code Annotated section 27-7-103]. The inquiry ends if his petition is not timely and if he has failed to demonstrate that he is entitled to relief from the statute of limitations." Id.

In Keller, 2014 WL 4922627, this court affirmed the Petitioner's convictions following remand, and the Tennessee Supreme Court denied his application for appeal on January 15, 2015. Accordingly, the Petitioner had until January 15, 2016, to file his error coram nobis petition. The Petitioner filed his petition for writ of error coram nobis on May 24, 2023, seven years after the limitations period had expired. Accordingly, the petition is

time-barred unless the Petitioner demonstrates he is entitled to equitable tolling of the statute of limitations.

To establish equitable tolling, the Petitioner relies on an investigative report obtained on January 30, 2023, alleging that "Mrs. Debnam had been terminated by the TBI 'for the good of the service,' two years prior to trial." Although he claims this information reveals her neglect and fraudulent behaviors, would have been useful to the jury, and might have raised reasonable doubt in their minds as to his guilt, we disagree. First, the investigative report does not assert that the partial DNA profile obtained by Dr. Debnam in the Petitioner's case was tainted, and the Petitioner does not so allege. We further observe that while the investigative report may be newly discovered, the evidence it contains in this case is not. As fully detailed above, the Petitioner has been aware of Dr. Debnam's testimony since his trial. He has unsuccessfully mounted several challenges to the DNA evidence on direct appeal, his first error coram nobis petition, and his post-conviction proceedings. Yet, the Petitioner has failed to explain why he waited until January 30, 2023, almost seven years after the statute of limitations expired, to contact a private investigator in order to request the records at issue pertaining to a known trial witness. The petition is simply devoid of any details concerning the timeline for the discovery of this alleged newly discovered evidence. Accordingly, we are unable to conclude that the grounds upon which the Petitioner is seeking relief are sufficiently "later arising" to satisfy due process tolling.

In addition, we conclude that the Petitioner has failed to establish a reasonable basis to conclude that, had the jury known of the investigative report at the time of the trial, the result of the proceedings may have been different. This court previously determined that the ski mask from which the DNA was obtained was not critical to the State's case because the State prosecuted the Petitioner under a theory of criminal responsibility and, at no point, alleged that the Petitioner wore a ski mask or was in the get-away van during the robbery. Keller, 2021 WL 2886338, at *7. The Petitioner was convicted based on the testimony of two of his accomplices, and this court previously determined their testimony was corroborated by evidence in addition to the ski mask, including a blue pickup, connected by other evidence to the Petitioner, that had momentarily blocked Detective Heath's pursuit of the white getaway van at the scene of the crime. Based on this evidence, we similarly conclude that had the jury been presented with the investigative report, it would have served no other purpose than to impeach the partial DNA profile obtained by Dr. Debnam. Wlodarz v. State, 361 S.W.3d 490, 499 (Tenn. 2012) (quoting Hart, 911 S.W.2d at 375), abrogated on other grounds by Frazier v. State, 495 S.W.3d 246 (Tenn. 2016) ("[N]ewly discovered evidence which is merely cumulative or 'serves no other purpose than to contradict or impeach' does not warrant the issuance of a writ."). As such, the alleged newly discovered evidence in the form of the investigative report cannot serve as grounds for coram nobis relief.

On this record, the Petitioner has failed to show that a strict application of the limitations period would effectively deny him a reasonable opportunity to present the claim, and therefore, he is not entitled to due process tolling. We conclude that summary dismissal was proper.

## **CONCLUSION**

Based on the above reasoning and analysis, we affirm the judgment of the coram nobis court.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE